FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **PROJECT VOTE/VOTING FOR AMERICA, INC.**<br>737 ½ 8th St SE<br>Washington, DC 20003<br><br>　　Plaintiff,<br><br>　　v.<br><br>**ELISA LONG,**<br>*In Her Official Capacity as General Registrar of Norfolk, VA*<br>City Hall Building, Room 808<br>810 Union Street<br>Norfolk VA 23510,<br><br>**NANCY RODRIGUES,**<br>*In Her Official Capacity as Secretary, State Board of Elections,*<br>200 N. 9th Street, Room 101<br>Richmond, VA 23219,<br><br>　　Defendants. | CIVIL ACTION NO.<br><br>2:10 CV 75 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

This is an action seeking declaratory and injunctive relief prohibiting the Defendants from denying Plaintiff Project Vote/Voting for America, Inc. (hereinafter "Project Vote") access to certain voter registration records relating to the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, in violation of Section 8(i) of the National Voter Registration Act of 1993 ("NVRA" or

"Act"), 42 U.S.C. § 1973gg-6(i). Defendants, by invoking a Virginia statute and misinterpreting the NVRA, have denied Project Vote's requests to inspect and copy the completed voter registration applications and related records of prospective registrants who were denied registration in the city of Norfolk, Virginia in advance of the 2008 Presidential election. The right of Project Vote and any other member of the public to inspect and copy those records and other records relating to voter registration activities is granted by Section 8(i) of the NVRA, and Defendants' refusal to permit such access to public records is a violation of clear and unambiguous federal law.

Moreover, granting Project Vote access to the records at issue is strongly in the public interest. In the course of their ongoing nonpartisan voter protection efforts and their work with local community groups in Virginia, Project Vote and Advancement Project (co-counsel for Project Vote herein), both national civil and voting rights organizations, suspected that properly completed voter registration applications submitted by qualified and eligible citizens and residents of Norfolk, Virginia, may have been incorrectly rejected by the Norfolk General Registrar. Specifically, Project Vote learned that many applications submitted by ostensibly qualified college students at a historically African-American public university in Norfolk were being rejected by the local registrar.

As a consequence of those rejections, eligible voters may have been prevented or discouraged from voting in Virginia's 2008 general election. Without access to the records at issue in this case, however, Project Vote cannot determine whether the applications were lawfully rejected and/or whether systemic election administration problems with the Norfolk General Registrar's Office exist. Analysis of the rejected applications from 2008 is essential to identifying and correcting any existing election administration problems in advance of the 2010

federal midterm elections and ensuring that any voter registration drives that may be conducted by Project Vote or its community partners—or any other private group—during the 2010 election cycle will be successful in terms of registering the highest number of qualified applicants.

Project Vote and Advancement Project expended significant time and resources to investigate these issues and assist their local community partners with various voter protection concerns, including potentially improper election administration practices in the City of Norfolk and in other local jurisdictions in the Commonwealth of Virginia. By preventing Project Vote's access to these records, Defendants are denying Project Vote's rights under the NVRA, subverting the Act's purpose, and inhibiting Project Vote's efforts to carry out its voter protection and election administration reform programs and activities.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331, and it may issue a declaratory judgment and provide for further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Venue appropriately lies in this District and Division pursuant to 28 U.S.C. § 1391.

3. An actual and justiciable controversy exists between Project Vote and Defendants.

## PARTIES

4. Plaintiff Project Vote is a nonprofit 501(c)(3) charitable organization existing under the laws of Louisiana, with its principal office in the District of Columbia. Project Vote works to empower, educate, and mobilize low-income, minority, youth, and other marginalized

and underrepresented voters. Project Vote works towards systemic changes, lowering the barriers that prevent underrepresented populations from registering and voting, while working to enforce and expand public policies and procedures that encourage full participation in elections. In Virginia, Project Vote recently conducted election protection work during the 2009 election and released a statutory review memo on election procedures in Virginia. Project Vote also tracks election bills in Virginia and provides summaries on the impact of such bills to voters. In 2005, Project Vote conducted a voter registration drive in Norfolk, Virginia. After learning that numerous voter registration applications had been denied, Project Vote unsuccessfully sought to obtain copies of the rejected applications from Norfolk's General Registrar, Elisa Long.

5. Defendant Elisa Long is sued in her official capacity as General Registrar of Norfolk, Virginia. Under Virginia law, Ms. Long's responsibilities in this capacity include accepting and processing voter registration applications and requests for transfer or change of address; maintaining the official registration records for Norfolk, Virginia; preserving the written applications of all persons who are registered; and maintaining accurate and current registration records and complying with the applicable requirements for the transfer, inactivation, and cancellation of voter registrations. *See* Va. Code Ann. § 24.2-114 (6), (8), (12).

6. Defendant Nancy Rodrigues is sued in her official capacity as Secretary of the Virginia State Board of Elections. Under Virginia law, Ms. Rodrigues's responsibilities in this capacity include overseeing the duties of the State Board of Elections, which supervises and coordinates the work of the county and city electoral boards and registrars to maintain uniformity of practices and proceedings and to preserve legality and purity in all elections. *See* Va. Code Ann. § 24.2-103. As Secretary of the State Board of Elections, Ms. Rodrigues is also the chief state election official responsible for the coordination of the Commonwealth's responsibilities

under the NVRA. *See* Va. Code Ann. § 24.2-404.1. The State Board of Elections is charged with making rules and regulations and with issuing instructions and providing information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws. *Id.*

## FEDERAL AND STATE STATUTORY FRAMEWORKS

7. Congress enacted the NVRA in 1993 to protect the integrity of the electoral process by better securing citizens' fundamental right to vote with improved voter registration procedures. Pub. L. No. 103-31, 107 Stat. 77 (1993) (codified at 42 U.S.C. § 1973gg *et seq.*). In so doing, Congress mandated reform to remedy "discriminatory and unfair registration laws and procedures" that have "direct and damaging" effects on voter participation in federal elections and disproportionately harm voter participation among racial minorities. 42 U.S.C. § 1973gg. Crucial to this reform is ensuring that "accurate and current voter registration rolls are maintained." 42 U.S.C. § 1973gg(b)(4).

8. To this end, the NVRA imposes a variety of requirements on states concerning voter registration procedures and policies. 42 U.S.C. § 1973gg-6.

9. Accuracy of voter rolls is critically important to guaranteeing that eligible voters are afforded the right to vote. To ensure that these rolls are accurate and current, Section 8(i) of the NVRA requires states to make voter registration records publicly available:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, *all records* concerning the implementation of programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. § 1973-gg6(i)(1) (emphasis added) (the "Public Disclosure Provision"). The

Public Disclosure Provision is essential to the NVRA's purpose of ensuring accurate and non-discriminatory voter registration practices because it allows the public to confirm that states are abiding by the federal legislation.

10. Virginia law, however, imposes additional restrictions on public access to records concerning the accuracy and currency of voter registration rolls, such that only certain limited records relating to voter registration list maintenance are permitted to be inspected or copied by the public. *See* Va. Code Ann. § 24.2-444(B).[1] This restriction limits public access to only those records maintained related to the specific list maintenance programs described in §§ 24.2-427, 24.2-428, and 24.2-428.1 These programs primarily involve processes for removing previously registered individuals from the lists of registered voters or deactivating their registration status.

11. Virginia law also allows the public to inspect—but not photocopy—certain secondary lists of registered voters and rejected voter registration applicants, which are prepared by the State Board of Elections and distributed periodically to the general registrars. *See* Va. Code Ann. § 24.2 444(A). All other voter registration records are specifically prohibited by Virginia law from being available for public inspection or copying. *See* Va. Code Ann. § 24.2 444(C) ("No voter registration records other than the lists provided by the State Board under subsection A and the records made available under subsection B shall be open to public

---

[1] Section 24.2-427 empowers General Registrars to cancel the registration of previously registered voters known to be deceased or otherwise disqualified to vote in Virginia. Va. Code Ann. § 24.2-427. Section 24.2-428 empowers the State Board of Elections to establish a voter list maintenance program designed to identify voters who have moved, send notices to those individuals' last known address seeking updated information, and deactivate those voters' registration if they do not respond within 30 days. Va. Code Ann. § 24.2-428. Section 24.2-428.1 details other procedures by which General Registrars may deactivate the registration status of previously registered voters. Va. Code Ann. 24.2-428.1.

inspection."). Thus, according to Virginia law, the primary records with which election officials determine whether to add new applicants to the rolls or reject their applications—i.e., completed voter registration applications—may be neither inspected nor copied.

12. Consequently, when voter registration applications are rejected, the applications themselves, which are essential in determining whether the rejections were proper, are not available for public inspection under Virginia law. These records are crucial to ensuring the accuracy and currency of the voter rolls, because, without access to these records, the public cannot ascertain whether individuals who *should be* on the rolls actually are. Virginia law therefore limits public access to records concerning the accuracy and currency of registration records to a greater degree than is permitted by the Public Disclosure Provision of the NVRA, which mandates that "all records" concerning the accuracy and currency of the voter rolls be made available for public inspection and/or copying.

13. Accordingly, Section 24.2-444 on its face and as interpreted by Defendants violates and is preempted by the Public Disclosure Provision of the NVRA.

## FACTUAL ALLEGATIONS

14. Through its ongoing voter protection work with Advancement Project and local community organizations in Virginia, Project Vote received reports that several students at Norfolk State University—a historically African-American public university located in Norfolk, Virginia—had experienced difficulty as they attempted to register to vote in advance of the November 2008 primary and general elections. Specifically, Project Vote learned that many applications submitted by ostensibly qualified on-campus NSU students were being rejected by Defendant Long's office.

15. On May 11, 2009, Advancement Project requested by email that Defendant Long

"make available for inspection and copying the completed voter registration applications of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general election," and also other documents, such as "documents identifying the reasons the applications were rejected" (collectively the "Requested Records").

16. Advancement Project advised Defendant Long that the Requested Records were required to be made available for public inspection and copying pursuant to the Public Disclosure Provision, notwithstanding any Virginia law that might be interpreted to the contrary.

17. On May 13, 2009, Defendant Long responded that she would not permit inspection or copying of the Requested Records, stating that Virginia law, particularly Virginia Code § 24.2-444, supported her position.

18. Later that day, Martha Brissette, an attorney and policy analyst with the Virginia State Board of Elections, emailed Advancement Project stating that Defendant Long had correctly declined to permit inspection and copying of the Requested Records.

19. On May 15, 2009, representatives from Advancement Project and Project Vote traveled to Defendant Long's office in Norfolk, Virginia, where they again requested access to the Requested Records and were denied the opportunity to inspect or copy those materials.

20. On June 22, 2009, Advancement Project and Project Vote, on behalf of themselves and all others similarly aggrieved, wrote to Defendant Rodrigues, pursuant to Section 11(b) of the NVRA, giving notice of the violation of the Public Disclosure Provision and requesting that Defendant Rodrigues undertake appropriate remedial measures. Specifically Plaintiff and Advancement Project requested the State Board of Elections to issue a written directive to all General Registrars and state election officials advising them of their obligation

under the NVRA to permit inspection and copying, upon request, of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," including copies of completed voter registration applications.

21. On July 22, 2009, Ms. Brissette informed Plaintiff and Advancement Project by email that the State Board of Elections, at its July 10, 2009 meeting, had voted to request an informal opinion of the Attorney General of Virginia regarding this matter.

22. On September 25, 2009, Ms. Brisette forwarded to Plaintiff and Advancement Project the Attorney General's informal opinion, dated September 23, 2009, and authored by Stephanie Hamlett, Senior Counsel to the Attorney General. In that informal opinion, Ms. Hamlett concluded—contrary to the plain language of the NVRA—that "the completed voter registration application of any individual is not a part of the record of the implementation of programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of eligible voters covered by [the Public Disclosure Provision]." The Defendants again denied Project Vote's request for access to the Requested Records.

23. To date, Defendants have not made the Requested Records available to Project Vote or its representatives. This continued refusal frustrates and hampers Project Vote's voter registration activities and mission and violates its rights under the NVRA.

24. The NVRA's civil enforcement provision allows for a private right of action by persons "aggrieved by a violation" after providing "written notice of the violation to the chief election official of the State involved." 42 U.S.C. § 1973gg-9(b)(1). If the violation is not corrected within 90 days after that official's receipt of such notice, the aggrieved person may bring a civil action in the appropriate district court for declaratory or injunctive relief with

respect to the violation. 42 U.S.C. § 1973gg-9(b)(2). As outlined above, Defendants have failed to take remedial action within the 90-day period prescribed by 42 U.S.C. § 1973gg-9(b) by refusing to permit Project Vote access to the Requested Records for inspection and copying.

25. Project Vote brings this suit to enforce its private right of action and rights under the NVRA and to challenge Virginia Code § 24.2-444 and its unlawful application here.

## COUNT I

### (Violation of Federal Law (NVRA))

26. Project Vote repeats and realleges the preceding allegations as though fully set forth herein.

27. The Supremacy Clause of the United States Constitution, Art. VI, par. 2, states in part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof...shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding."

28. The NVRA and its Public Disclosure Provision place binding requirements on the states. To the extent that any state law conflicts with the NVRA, such law is preempted and superseded by the NVRA as a federal statute.

29. The Public Disclosure Provision explicitly and unambiguously requires that the Requested Records be available to the public for inspection and, where available, photocopying, because the Requested Records are "records concerning the implementation of programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i).

30. To the extent that Virginia Code § 24.2-444 or any other statutory or regulatory provision or administrative practice of Virginia prohibits the disclosure of information required

to be made available for public inspection and photocopying pursuant to the Public Disclosure Provision of the NVRA, such provisions and practices subvert the purpose of the NVRA and are, therefore, invalid and unenforceable. Instead, § 24.2-444 of the Virginia Code provides, and Defendants assert, that only records related to specific programs designed to *remove* registered voters from the voting rolls fall within the Public Disclosure Provision. This limitation subverts the plain language and purpose of the NVRA.

31. Virginia Code § 24.2-444 and the actions of Defendants to deny Project Vote access to the Requested Records have prevented Project Vote and the public from inspecting or photocopying those records, and therefore Virginia Code § 24.2-444 is preempted by the NVRA.

## PRAYER FOR RELIEF

WHEREFORE, Project Vote respectfully requests that this Court enter judgment in its favor and that the Court:

A) Declare that Defendants are in violation of the NVRA by refusing to grant access for inspection and photocopying of the Requested Records;

B) Declare that the NVRA preempts Virginia Code § 24.2-444 or any other Virginia law, rule, or regulation that forecloses the right to inspect and to copy the Requested Records;

C) Permanently enjoin Defendants from refusing to permit access to any requesting party for copy and/or inspection of voter registration applications and related records, as sought by Project Vote in this matter;

D) Award Project Vote the costs incurred in pursuing this action, including attorneys' fees and reasonable expenses, as authorized by 42 U.S.C. § 1973gg-9(c) and other applicable provisions; and

E) Grant such other and further relief as the Court deems proper.

This 16th day of February 2010.

       Respectfully submitted,

       /s/ Ryan M. Malone
       Ryan M. Malone (VA Bar # 48526)
       Jason G. Idilbi (VA Bar #76869)
       Augustine M. Ripa (VA Bar #77244)

       David Overlock Stewart
       (Pro hac vice application pending)

       ROPES & GRAY LLP
       700 12th Street NW
       Suite 900
       Washington D.C. 2005
       202-508-4669
       202-383-8322
       Ryan.Malone@ropesgray.com

       Bradley E. Heard
       ADVANCEMENT PROJECT
       1220 L Street, NW
       Suite 850
       Washington, DC 20005
       (Pro hac vice application pending)

       Yolanda Sheffield
       PROJECT VOTE
       737 ½ 8th Street SE
       Washington, D.C. 20003
       (Pro hac vice application pending)

       *Counsel for Plaintiff Project Vote*