UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**PROJECT VOTE/VOTING FOR AMERICA,**

      Plaintiff,

v.                                              Case No. 2:10-CV-75

**ELISA LONG, General Registrar for the
City of Norfolk, Virginia, and
DONALD PALMER, Secretary of the
Virginia State Board of Elections**[1]

      Defendants.

### DEFENDANT DONALD PALMER'S
### MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The sole issue before the Court is whether Plaintiff Project Vote is entitled to judgment as a matter of law on its claim that it has a right to obtain copies of completed voter registration applications in Virginia under the Public Disclosure Provision of the National Voting Rights Act of 1993 ("NVRA"). For the reasons stated below, Defendant Donald Palmer, through counsel, asks the Court to deny Plaintiff's Motion for Summary Judgment and grant Defendant's summary Judgment under Fed. R. Civ. P. 56(f).

### I. FACTS

There are no disputed issues relating to evidentiary facts.

---

[1] Donald Palmer became the Secretary of the Virginia State Board of Elections ("SBE") on January 28, 2011, and has been substituted as a named Defendant by operation of law under Federal Rule of Civil Procedure 25(d).

## II. LEGAL STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact and where the moveant is entitled to judgment as a matter of law. Fed. R. Civ. P. 65; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. ARGUMENT

The Public Disclosure Provision, 42 U.S.C. §§ 1973gg-6(i), provides that:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters,* except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> (2) The records maintained pursuant to paragraph (1) shall include *lists* of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

(Emphasis added).

In its ruling on Defendants' Motion to Dismiss (Docket Entry No. 32), this Court found that the terms "programs and activities" are broad enough to include completed voter registration forms. Defendants preserve and reassert all arguments to the contrary made at the motion to dismiss stage. Assuming, however, that the Court would otherwise adhere to its prior ruling, Defendants submit that this construction is both inconsistent with two other federal statutes which seek to protect the confidentiality of voter registration information and is contrary to the Congressional purpose underlying all three laws: the encouragement of voting.

**A. Plaintiff's Interpretation of the NVRA Runs Counter to Other Federal Statutes Protecting the Security and Identity of Voter Application or Similar Information, and Harmonizing These Statutes Supports the Defendants' Position.**

There are at least two federal statutes which support the Defendants' position that voter registration applications are to be protected, not publicly disclosed. Harmonizing the NVRA with these other federal statutes supports finding *against* public disclosure of voter registration applications.

**1. The MOVE Act Protects the Confidentiality of Certain Voter Registration Information, as Does UOCAVA.**

The first of those statutes, the Military and Overseas Voter Empowerment ("MOVE") Act, enacted on October 28, 2009, amended the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), relating to military and overseas voters. In the MOVE Act's section on "State Responsibilities," 42 U.S.C. § 1973ff-1, states are required to take certain actions to (among other things) prevent delays in getting absentee ballots to overseas voters. Subsection (e)(6) of this statute states:

> (6) Security and privacy protections.
>
> (A) Security protections. To the extent practicable, States shall ensure that the procedures established under subsection (a)(6) [setting forth means for providing absentee voting overseas] protect the security and integrity of the voter registration and absentee ballot application request processes.
>
> (B) Privacy protections. To the extent practicable, the procedures established under subsection (a)(6) shall *ensure that the privacy* of the *identity* and *other personal data* of an absent uniformed services voter or overseas voter *who requests or is sent a voter registration application* or absentee ballot application under such subsection is protected throughout the process of making such request or being sent such application.

42 U.S.C. § 1973ff-1(e)(6) (emphasis added).

Consistent with the earlier enacted NVRA, this section of the MOVE Act seeks to protect the "integrity of voter registration and ballot application request processes," while also requiring that states "ensure . . . the privacy of the identity and other personal data" of absent military and overseas applicants requesting voter registration applications, so that such information "is protected throughout the process of making such request or being sent such application." *Id.* This demonstrates, among other things, that Congress believes that the integrity of the voter registration process does *not* generally require public disclosure of the information demanded here.

In fact, Congress has indicated in the Move Act that the integrity of the voter registration process *and* the privacy of voter registration application information must *both* be protected,and that the former does not require violating the latter. Moreover, the Plaintiff's demand that voter registration applications be publically disclosed contradicts the federal privacy requirement in the Move Act, since under the Plaintiff's interpretation of the NVRA, all such applications, including those covered by the MOVE Act, would be subject to public disclosure.[2] The later-enacted MOVE Act requires a conclusion that these applications should not be disclosed under the NVRA.

The MOVE Act echoes privacy concerns that were already present in UOCAVA before it was amended by the MOVE Act. The pre-MOVE Act version of UOCAVA set forth state responsibilities in 42 U.S.C. § 1973ff-1. Subsections (c) and (d) of that section, which remain today in the UOCAVA, call for public statistical reports of the

---

[2] Plaintiff may try to argue that the MOVE Act only protects applicant privacy "throughout the process of . . . being sent such application." 42 U.S.C. § 1973ff-1(e)(6)(B). But that argument is without merit since publicly disclosing these applications would eviscerate the privacy protections of the MOVE Act as soon as an application is accepted or denied.

4

combined number of absentee ballots sent and received, but require that explanations for rejections of those ballots only be provided only to individual applicants. *Id.* This again shows a federal concern for protecting the confidentiality of voter registration information, in contrast to the Plaintiff's position mandating disclosure of virtually all such information.

### 2. The Help America Vote Act ("HAVA") Also Supports Keeping Voter Registration Information Confidential.

The second statute supporting the confidentiality of voter registration applications is the Help America Vote Act of 2002 ("HAVA"). HAVA was enacted in order to, among other things, help states replace punch-card voting machines, establish the Election Assistance Commission, and establish minimum election administration standards. HAVA amended other statutes, and its provisions are found in several parts of the U.S. Code, primarily at 42 U.S.C. § 15301 *et seq.* HAVA expressly preserves states' autonomy regarding implementation methods. *See* 42 U.S.C. § 15485.

A central feature of HAVA is its mandate for "fail safe" provisional voting, to protect the voting rights of persons whose eligibility cannot be determined when they appear to vote (*e.g.*, because they are not listed on a pollbook.) Section 42 U.S.C. § 15482 ("Provisional voting and voting information requirements") outlines minimal procedures for allowing such people to vote. These individuals have the right to complete a "provisional ballot" envelope along with a voter registration application providing indentifying information that can later be verified by the electoral board before

that ballot is actually counted as a vote. Virginia's provisional ballot implementation procedure includes voter registration applications. *See* Exhibit A.[3]

Under subsection (a)(5)(B) of that statute, a state or local election official must establish administrative procedures for provisional voting. 42 U.S.C. § 15482(a)(5)(B). One of those requirements is to "establish and maintain reasonable procedures necessary to protect the security, *confidentiality*, and integrity of personal information collected, stored or otherwise used" by a free access system showing whether someone's vote was counted. *Id.* (emphasis added). The statute then states: *"Access to information about an individual provisional ballot shall be restricted to the individual who cast the ballot."* *Id.* (emphasis added).

Importantly, this section of the HAVA incorporates by reference the NVRA, showing how the two statutes are to work congruently, including protection of the confidentiality of personal information collected in the provisional balloting process. The full text of 42 U.S.C. § 15482(a)(5) is as follows:

> (5) (A) At the time that an individual casts a provisional ballot, the appropriate State or local election official shall give the individual written information that states that any individual who casts a provisional ballot will be able to ascertain under the system established under subparagraph (B) whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted.
>
> (B) The appropriate State or local election official shall establish a free access system (such as a toll-free telephone number or an Internet website) that any individual who casts a provisional ballot may access to discover

---

[3] These documents are subject to Virginia's Freedom of Information Act and are self-authenticating public records under Federal Rules of Evidence 901 and 902. *See* SBE website at: http://register.dls.virginia.gov/GUIDANCE/gd201065_5.html; *Williams v. Long*, 585 F. Supp. 2d 679, 689 (D. Md. 2008)(document available under federal FOIA was self-authenticating under FRE 902(5); *Wolf Lake Terminals, Inc.* v. *Mutual Marine Insurance Company.*, 433 F. Supp. 2d 933, 944 (N.D. Ind. 2005)(document available under federal FOIA admissible under FRE 901(b)(7) and 902(5)).

> whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted. *States described in section 4(b) of the National Voter Registration Act of 1993* (42 U.S.C. 1973gg-2(b) *may meet the requirements of this subsection using voter registration procedures established under applicable State law*. The appropriate State or local official shall establish and maintain reasonable procedures necessary to protect the security, *confidentiality*, and integrity of *personal information* collected, stored, or otherwise used by the free access system established under paragraph (5)(B). *Access to information about an individual provisional ballot shall be restricted to the individual who cast the ballot.*

(Emphasis added).

At the very least, this section of HAVA shows a federal intent of keeping information provided while applying for provisional balloting confidential, such information being "restricted to the individual who cast the ballot." *Id.* HAVA, enacted much more recently than the NVRA, and expressly intended to operate in conjunction with the NVRA, expresses Congressional intent that is consistent with the Defendants' interpretation of the Public Disclosure Provision of the NVRA, i.e., one that does *not* mandate public disclosure of completed voter registration applications.

### 3. The Law of the Fourth Circuit Requires that These Statutes Be Harmonized -- a Process That Supports Non-Disclosure of Voter Registration Applications.

Under the law of the Fourth Circuit, if "the language of the statute is unambiguous and there is no clear Congressional intent to the contrary, the language is conclusive." *Cooper v. B & L, Inc.*, 66 F.3d 1390, 1395 (4th Cir. 1995) (citing *In re JKJ Chevrolet*, 26 F.3d 481, 483 (4th Cir. 1994)). "In a case such as this, when we must construe two statutory schemes together, our duty is to reconcile and harmonize the statutes, and carry out the legislative intent behind both schemes." *Id.* (citing *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Assoc.*, 491 U.S. 490, 510 (1989)).

7

In *Shanty Town Assoc. Ltd. Partnership v. Environmental Protection Agency*, 843 F.2d 782, 793 (4th Cir. 1988), the Fourth Circuit held that: "[o]ur first obligation, when presented with a possible conflict between two federal statutes, is always to attempt to harmonize them" (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). In *Morton*, the U.S. Supreme Court stated: "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." 417 U.S. at 551.

The only way to harmonize the Public Disclosure Provision of the NVRA, the MOVE Act and HAVA, is to construe "programs and activities" to exclude completed voter registration applications.

**B. Disclosing All Information from the Applications Except SSNs Will Chill Voter Registration Applications and Frustrate the Overall Purpose of the NVRA.**

No construction of these acts that will chill voter registration should be adopted because all three federal acts are intended to promote voting. The Court in its earlier Opinion at p. 32 agreed that disclosure of social security numbers ("SSNs") could have a detrimental effect on voter registration. Indeed, it is clear that Congress could have had no intent to release that information given the fact that any system that conditions voting on the public release of SSNs is unconstitutional. The Fourth Circuit has held that release of such information puts an intolerable burden on a person's right to vote. *See Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993)(striking down state law conditioning voting on release of SSNs).

The Fourth Circuit's holding in *Greidinger*, barring disclosure of SSNs in voting documents disclosed to the public, should apply with equal force to the disclosure of other sensitive information on completed voter registration applications, including signatures and dates of birth, which can be used for identity theft and other kinds of fraud. If Congress did not intend the release of SSNs, there is simply no textual support for a conclusion that it intended the release of the other information. Indeed, all available indicia are to the contrary.

It should also be noted that Congress in HAVA expressly stated the intent to preserve state discretion on how best to implement the states' responsibility for maintaining voter registration generally and particularly the confidentiality of individual provisional voter records. Construed in light of the MOVE Act and HAVA, the Public Disclosure Provision of the NVRA is properly implemented in the challenged Virginia statute, Virginia Code § 24.2-444.

In a day when identity theft is a concern and information can be distributed widely and quickly on the internet, placing a person's date of birth, signature, felony record (if any) and information about mental capacity in the public domain will lead potential voters to avoid the election process rather than face public disclosure of this information. Plaintiff may argue that some of this information is already publicly available, including, for example, a person's address (on the list of registered voters available in registrar offices) or a judgment of mental incapacity. What this fails to realize is that placing all this information in one location will make voter registration applications an easy target for persons wishing to collect this data. No construction of the

three federal statutes discussed above which threatens to chill voting is consistent with the known intent of Congress to foster voting under these statutes.

## IV.  CONCLUSION

The NVRA's statutory scheme addresses federal elections.  The statute intends to "increase the number of eligible citizens who register to vote in elections for Federal office" and "to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office."  42 U.S.C. §§ 1973gg(b)(1) and (2).  Congress did not intend to entirely displace the individual states' election processes or to require complete disclosure of state election records regulated by state law.  Voter registration applications are state records, not subject to federal FOIA.  5 U.S.C. § 552, *et seq.*  Interpreting the Public Disclosure Provision to mandate disclosure of all state records related to voter registration extends the NVRA well beyond the intent of Congress.

The statutory scheme is clear.  Congress intended that the states maintain accurate and current lists of eligible voters for federal elections.  42 U.S.C. § 1973gg-6(b)(4).  Congress required the states to establish programs and activities to maintain those lists. 42 U.S.C. §§ 1973gg-(6)(a)(4), (b), and (c).  Congress required that records related to those programs and activities be open to the public, 42 U.S.C. § 1973gg-6(i)(1).  But interpreting "programs and activities" to include voter applications is not connected with the purpose of the law.  Nothing in the text of the NVRA compels this construction.

Moreover, construing the Act in this way brings portions of it into partial conflict with the MOVE Act and into conflict or tension with HAVA.  This construction also

threatens to chill voting, which would result in substantial conflict with Congressional purpose.

On all these grounds, the Court should deny Plaintiff's Motion for Summary Judgment. Having done so, it should enter judgment for Defendant Palmer (and indeed, both Defendants) under Rule 56(f), which permits the Court to grant summary judgment to a non-moveant or *sua sponte*.

                Respectfully submitted,

                DONALD PALMER

                Defendant

                By        /s/
                Stephen M. Hall, VSB #44132
                Attorney for Defendant Palmer
                Office of the Attorney General
                900 East Main Street
                Richmond, Virginia 23219
                Phone: (804) 785-1586
                Fax: (804) 371-2087
                Email: shall@oag.state.va.us

Kenneth T. Cuccinelli, II
Attorney General of Virginia

E. Duncan Getchell, VSB # 14156
Solicitor General of Virginia
Email: dgetchell@oag.state.va.us

Wesley G. Russell, Jr., VSB # 38756
Deputy Attorney General
Email: wrussell@oag.state.va.us

Stephen M. Hall, VSB # 44132*
Assistant Attorney General III
Office of Attorney General
900 East Main Street
Richmond, VA  23219
Phone:  (804) 371-6019
Fax:  (804) 371-8718
Email:  shall@oag.state.va.us

*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on this 1st day of March, 2011, I filed with the Court's ECF system a true copy of the forgoing instrument, which will then be sent electronically to the following counsel of record:

>Ryan M. Malone, Esquire
>Augustine M. Ripa, Esquire
>Jason Gassan Idilbi, Esquire
>David O. Stewart, Esquire
>Douglas H. Hallward-Driemeier, Esquire
>Ropes & Gray LLP
>700 12th Street NW
>Suite 900
>Washington, D.C. 20005
>
>Jeff W. Rosen, Esquire
>Lisa Ehrich, Esquire
>Pender & Coward
>222 Central Park Avenue
>Virginia Beach, Virginia  23462

>　　　　/s/
>Stephen M. Hall, VSB #44132
>Attorney for Defendant Palmer
>Office of the Attorney General
>900 East Main Street
>Richmond, Virginia 23219
>Phone:  (804) 785-1586
>Fax:  (804) 371-2087
>Email:  shall@oag.state.va.us