UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

PROJECT VOTE/VOTING FOR AMERICA,

Plaintiff,

v.

Case No. 2:10CV75

ELISA LONG and
NANCY RODRIGUES,

Defendants.

## DEFENDANT ELISA LONG'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Elisa Long, Registrar of the City of Norfolk, by counsel, hereby opposes plaintiff's Motion for Summary Judgment.

Plaintiff Project Vote, relying on the Court's decision on defendants' Motion to Dismiss, maintains that the NVRA's Public Disclosure Provision, 42 U.S.C. §§ 1973gg-6(i), mandates Long's disclosure of original voter registration applications as "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." The Court should deny plaintiff's motion where (1) plaintiff fails to analyze the plain and contextual meanings of the terms "programs and activities," which, as employed by Congress, relate directly to the NVRA's purpose "to ensure that accurate and current voter registration rolls are maintained;" (2) two recent federal statutes, the Help America Vote Act and the MOVE Act, support Congressional intent to protect the personal information on voter registration applications; and (3) disclosure would chill voter registration, running counter to Congressional intent.

For these reasons, addressed below, Long requests that the Court deny plaintiff's motion and grant summary judgment in defendants' favor pursuant to Fed. R. Civ. P. 56(f).

## I. STATEMENT OF FACTS

There are no material facts in dispute.

## II. LEGAL STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

## III. ARGUMENT

### A. Analyzing the Plain and Contextual Meanings of "Programs and Activities" Compels Non-Disclosure of the Voter Registration Applications

In ruling on defendants' Motion to Dismiss, the Court looked to the statute's plain and contextual meanings, stating, "[a] statute's plain meaning is defined by the statutory language's common and ordinary meaning, absent an indication from Congress that the language should have a different meaning ... and by both the specific context in which the language is used and in the broader context of the statute as a whole." Op., p. 17 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). A review of both the plain and contextual meaning of the Public Disclosure Provision reveals that Congress did not intend to mandate disclosure of voter registration applications, which are state records subject to state disclosure laws.

The Public Disclosure Provision, 42 U.S.C. §§ 1973gg-6(i), provides that:

> (1) Each state shall maintain for at least 2 years and shall make available for public inspection and, when available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters* except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> (2) The records maintained pursuant to paragraph (1) shall include *lists* of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

(Emphasis added).

In analyzing subsection (1)'s plain meaning, the Court defined the terms "eligible," "current," and "accurate." Relying on those definitions, the Court found that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." Op., p. 19. The Court stated further that, "'official lists of eligible voters' would be inaccurate and obsolete if eligible voters were improperly denied registration." Op., pp. 19-20. Then defining the terms "concern" and "implementation," the Court concluded that, "records which relate to carrying out voter registration procedures are subject to the Public Disclosure Provision's requirements." Op., p. 22.

In reaching its conclusion, the Court failed to define the plain meaning of the operative phrase "programs and activities," or to review the use of those terms in context. Analysis of these terms reveals that Congress intended the Public Disclosure Provision to have a specific meaning related directly to its mandate that states "ensure that accurate and current voter registration rolls are maintained." 42 U.S.C. § 1973gg(b)(4).

3

*Webster's Third New International Dictionary* defines "program" to mean "a plan or system under which action may be taken toward a goal," and "activity" as "an active force." The "programs and activities" referred to in the Public Disclosure Provision are the "plans," "systems," or "forces" instituted by the states under the Congressional mandate to maintain the accuracy and currency of the eligible voter lists.

The NVRA sets forth four Congressional purposes: (1)"to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;" (2) "to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the election process; and (4) "to ensure that accurate and current voter registration rolls are maintained." 42 U.S.C. § 1973gg(b)(1) - (4). Section 1973gg-6 contains the specific provisions outlining for the states the statutory scheme to promote the dual purposes of voter registration and list maintenance. As demonstrated below, Congress used the terms "program" and "activities" in those subsections of §1973gg-6 that correlate directly with the statute's list maintenance purpose set forth in § 1973gg(b)(4).

Sections 1973gg-6(a)(1), (2) and (3) address registration and establish the means to increase voter registration. Section 6(a)(1) comprises the motor-voter mandate, allows for mail registration, and addresses voter registration agencies. Section 1973gg-6(a)(2) requires notices to applicants about the disposition of their application. Section 1973gg-6(a)(3) provides that: "each State shall – provide that the name of a registrant may not be removed from the official list of eligible voters except – (A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental

incapacity; or (C) as provided under paragraph (4)."

In turn, § 1973gg-6(a)(4) details the means by which states may remove voters from their official lists of eligible voters. This section provides that: "each State shall -- conduct a general *program* that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or "a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)." 42 U.S.C. § 1973gg-6(a)(4).

Section 1973gg-6(b) then mandates that: "[a]ny State *program or activity* to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office – (1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965; and (2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote," except that the states may use the procedures described in subsections (c) and (d) to remove individuals from the lists. 42 U.S.C. § 1973gg-6(b) (emphasis added).[1]

Section 1973gg-6(c) addresses "Voter removal *programs*." (Emphasis added). Subsection 1973gg-6(c)(1) provides that a state may meet the program requirement of § 6(a)(4) "by establishing a *program*" using information supplied by the Postal Service (emphasis added). Subsection 1973gg-6(c)(2) requires states to complete, not later than 90 days prior to a federal election, "any *program* the purpose of which is to

---

[1] The House Report for this law states that the above procedure "attempts to incorporate an underlying purpose of [the NVRA]; that once registered, a voter should remain on the list of voters so long as the individual remains eligible to vote in that jurisdiction." *See* H.R. Report No. 103-9, at 16, reprinted in 1993 U.S.C.C.A.N. 105, at 122.

5

systematically remove the name of ineligible voters from the official lists of eligible voters." (Emphasis added).[2]

The Public Disclosure Provision, § 1973gg-6(i), which follows the above-cited sections, references the programs and activities intended by Congress in §§ 6(a)(4), (b), and (c), to ensure that the states maintain the voter lists in accordance with the statute. Thus, § 1973gg-6(i) requires the states to disclose "all records concerning the implementation of *programs and activities* conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters...." (Emphasis added). By ignoring the plain meaning of the phrase "programs and activities," and its contextual meaning in the overall statutory scheme, the Court ascribes to Congress an overreaching intent to require the states to disclose all documents related to voter registration and to list maintenance, rather than those related to list maintenance.

Virginia's list maintenance "programs and activities" under the NVRA exemplify the statute's disclosure requirement. Virginia chose to comply with § 1973gg-6(c)(1), allowing a state to meet the general program requirement of § 6(a)(4) "by establishing a *program*" using information supplied by the U.S. Postal Service called the National Change of Address ("NCOA") program. The NCOA program matches the active voter registration rolls against the Postal Service National Change of Address Registry to identify registered voters who have moved and failed to notify the local general registrar of their change of address.[3] See Exhibit 1, Declaration of Garry E. Ellis, ¶ 3.

---

[2] Subsections 1973gg-6(d), (e), (f), and (g) address particular circumstances of removal, e.g., the specific procedure when a voter has changed residences, moved within the same jurisdiction, or been convicted in federal court. Subsection (h) was omitted by Congress.
[3] Once the match is performed, a notice is generated for those registered voters identified as having moved. The notice is mailed to the voter, and lists the address at which the

Virginia also has a program that complies with § 1973gg-6(b)(2), under which voter registration records are cancelled for individuals whose registration record has been moved to an inactive status for failing to respond to the NCOA Address Confirmation Notice mailed, and not updating their voter registration record in writing within two (2) General Elections for Federal Office. This program is performed after each General Election for Federal Office. See Exhibit 1, Declaration of Garry E. Ellis, ¶ 4.

### B. Contextual Review of the Public Disclosure Provision's Exceptions, Repeating Limitations on Disclosure Elsewhere in the Statute, Does Not Support Disclosure of the Voter Registration Applications

The exceptions set forth in the Public Disclosure Provision do not support disclosure of the voter registration applications. Section 1973gg-6(i) excepts from disclosure two types of records: those relating "to a declination to register to vote" or relating "to the identity of a voter registration agency through which any particular voter is registered." Plaintiff relies on the Court's conclusion that because these records "relate to voter registration procedures," they demonstrate "that the Public Disclosure Provision necessarily contemplates records relating to voter registration procedures. Op., p. 21.

A contextual review of these exceptions dictates otherwise. The two restrictions on disclosure repeat restrictions set forth in related provisions of the statute. Their significance is not that they relate to voter registration procedures, but that Congress

---

voter is currently registered along with the address provided by the USPS. The voter checks the appropriate address and mails the notice using the pre-paid envelope provided. Should the voter fail to return the notice within thirty (30) days, or if the notice is returned by USPS as undeliverable, that voter record is moved to an inactive status. The inactive status does not prevent the individual from voting, but requires the individual to affirm their resident address prior to voting. Depending on when and where the individual moved the voter may or may not be allowed to vote. The individual can stay inactive for up to two (2) General Elections for Federal office. This program comports with the VHRA's requirements. 42 U.S.C. § 1973gg-6(b)(4). See Exhibit 1, Declaration of Garry E. Ellis, ¶ 5.

7

intended to ensure that records restricted elsewhere would not be subject to disclosure pursuant to this provision.

Sections 1973gg-5 and 7 outline the specific restrictions reiterated in the Public Disclosure Provision. Section 1973gg-5, addressing Voter Registration Agencies, provides that: "No information relating to a declination to register to vote in connection with an application made at an office described in paragraph (6) may be used for any purpose other than voter registration." Section 1973gg-7 details the contents of mail voter registration forms, which must include, *inter alia*, "(ii) a statement that, if an applicant declines to register to vote, the fact that the applicant has declined to register will remain confidential and will be used only for voter registration purposes; and (iii) a statement that if an applicant does register to vote, the office at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration purposes." 42 U.S.C. § 1973gg-7(b)(4)(ii) and (iii).

The inclusion of these two exceptions in the Public Disclosure Provision is intentional. Congress included these exceptions to ensure that specific confidential information clearly restricted from public disclosure elsewhere in the statute remained restricted. In other words, that there would be no doubt that records related to declinations to register to vote and to the identification of voter registration agencies would not be included as part of the records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1).

### C. The "Shall Include" Language in Subsection (2) of the Public Disclosure Section Acts as a Limitation on Subsection (1); Otherwise Subsection (2) Becomes a Nullity

Plaintiff also relies on the Court's conclusion that § 1973gg-6(i)(2), the second part of the Public Disclosure Provision, does not limit the records subject to disclosure. Section § 1973-6(i)(2) specifies that:

> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

In the context of this statute, the term "shall include" acts as a limitation, not an enlargement. *See Blankenship v. Western Union Tel. Co.*, 161 F.2d 168, 169 (4th Cir. 1947) (interpreting the use of "includes" "as a *term of limitation* indicating what belongs to a genus, rather than as a term of enlargement" (emphasis added)); *see also Montello Salt. Co. v. Utah*, 221 U.S. 452, 466 (1911) (rejecting conclusion that use of the word "including" is "a word of enlargement" in "its ordinary sense," finding that it is used that way only in "its exceptional sense").

As addressed above, the statutory scheme limits the records subject to disclosure in § 1973gg-6(i)(1) to records related to programs and activities associated with list maintenance. In § 1973gg-§ 6(i)(2), Congress ensured that those records include "lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent" and "information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made."[4]

---

[4] A § 1973gg-(d)(2) notice "is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice" regarding return of the card with a change or no change of residence

At the hearing on the Motion to Dismiss, the Court stated that rather than seeing 1973gg-6(i)(2) as a "ceiling," the Court viewed it as a "floor." July 30, 2010 Tr., p. 32. That interpretation would render subsection § 1973gg-6(i)(2) as having no limitation at all, effectively nullifying § 1973gg-6(i)(2), because only the broad language in § 1973gg-(6)(i)(1) would have any force. The Fourth Circuit's rules of statutory construction do not permit a court to interpret a statute in a manner that nullifies part of it. A court must "begin with the premise that all parts of the statute must be read together, neither taking specific words out of context . . . nor interpreting one part so as to render another meaningless." *United States v. Snider*, 502 F.2d 645, 652 (4th Cir 1974)(citing *Helvering v. Morgan's, Inc.*, 293 U.S. 121, (1934)); *see also United States v. Shelton*, 465 F.2d 361, 362 (4th Cir. 1972)("such interpretation would serve to render this section of the statute totally ineffective. We decline to attribute any such intent to Congress," citing *United States v. Thomas*, 455 F.2d 320, 322-3 (6th Cir. 1972)).

In § 6(i)(2) Congress sought to ensure that records pertaining to the notices required before voters are removed from the lists, part of the mandated list maintenance program, are among those subject to disclosure. The records specifically identified by Congress in § 1973gg-(6)(i)(2) are those included in "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" in 42 U.S.C. § 1973gg-6(i)(1).

---

information and continued eligibility to vote. Reference to the § 1973gg-(d)(2) notices in § 1973gg-6(i)(2) relates directly to the Congressional purpose set forth in 42 U.S.C. § 1973gg(b)(4), "to ensure that accurate and current voter registration rolls are maintained." Under § 1973gg-(d)(3), "[a] voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with" § 1973gg-(d)(2).

D.  **Congressional Intent to Protect Personal Information on Voter Registration Applications is Exhibited in Related Federal Voting Statutes**

Long relies on and incorporates by reference Sections A (1), (2) and (3) of defendant Donald Palmer's Opposition to Plaintiff's Motion for Summary Judgment in support of this argument.

E.  **Disclosure of the Voter Registration Applications Would Chill Voter Registration and Hinder Congressional Intent in the NVRA**

Long relies on and incorporates by reference Section B of defendant Donald Palmer's Opposition to Plaintiff's Motion for Summary Judgment in support of this argument.

## IV. CONCLUSION

Congress did not intend to usurp the individual states' election processes or to require complete disclosure of state election records, which are regulated by state law. Voter registration applications are state records, not subject to federal FOIA. 5 U.S.C. § 552, et seq. Interpreting the Public Disclosure Provision to mandate disclosure of all state records related to voter registration extends the NVRA well beyond the intent of Congress.

The statutory scheme is clear. Congress intended that the states maintain accurate and current lists of eligible voters for federal elections. 42 U.S.C. § 1973gg-6(b)(4). Congress required the states to establish programs and activities to maintain those lists. 42 U.S.C. §§ 1973gg-(6)(a)(4), (b), and (c). Congress required that records related to those programs and activities be open to the public, 42 U.S.C. § 1973gg-6(i)(1), but also set forth two distinct restrictions to disclosure, repeating restrictions set forth elsewhere in the statute. 42 U.S.C. §§1973gg-5 and 7. Finally, Congress ensured that the records

related to list maintenance that are subject to disclosure, include those related to the 42 U.S.C. § 1973gg-6(d)(2) notices, required to be sent out prior to removing voters from the lists. 42 U.S.C. § 1973gg-6(i)(2). Nothing in the plain meaning of the Public Disclosure Provision or its contextual meaning within the statutory scheme suggests that Congress intended to require the disclosure of state voter registration applications.

For these reasons and those set forth in defendant Donald Palmer's Opposition to Plaintiff's Motion for Summary Judgment, defendant Elisa Long respectfully requests this Court to deny plaintiff's Motion for Summary Judgment and to enter judgment for defendants under Fed. R. Civ. P. 56(f), which allows the Court to grant summary judgment for a non-movant.

ELISA LONG

Defendant

By: _____/s/ Jeff W. Rosen_____
                Of Counsel

Jeff W. Rosen, Esquire
Virginia Bar No. 22689
*Attorney for Elisa Long*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia 23462
Phone: (757) 490-6253
Fax: (757) 497-1914
Email: jrosen@pendercoward.com

Lisa Ehrich, Esquire
Virginia Bar No. 32205
*Attorney for Elisa Long*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia 23462
Phone: (757) 490-6248
Fax: (757) 497-1914
Email: lehrich@pendercoward.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2011, I electronically filed the foregoing with the clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Augustin Marin Ripa
>Ropes & Gray, LLP
>700 12th Street NW; Suite 900
>Washington, DC 20005
>Augustine.ripa@ropesgray.com
>
>Jason Gassan Idilbi
>Ropes & Gray, LLP
>700 12th Street NW; Suite 900
>Washington, DC 20005
>Jason.idilbi@gopesgray.com
>
>Ryan Morland Malone
>Ropes & Gray, LLP
>700 12th Street NW; Suite 900
>Washington, DC 20005
>Ryan.malone@ropesgray.com
>*Attorneys for Plaintiff*
>
>Stephen M. Hall, Esq.
>Assistant Attorney General III
>Office of the Attorney General
>900 East Main Street
>Richmond, Virginia 23219
>Shall@oag.state.va.us
>*Attorney for Defendant Donald Palmer*

                                                                              /s/        Jeff W. Rosen
Jeff W. Rosen, Esq.
Virginia Bar No. 22689
*Attorney for Elisa Long*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia 23462
Phone: (757) 490-6253
Fax: (757) 497-1914
Email: jrosen@pendercoward.com

P:\DOCS\06750\48273\DT1331.DOC