IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| **PROJECT VOTE/VOTING FOR AMERICA**, **INC.** <br> 737 ½ 8th St SE <br> Washington, DC 20003 <br><br> Plaintiff, <br><br> v. <br><br> **ELISA LONG**, <br> *In Her Official Capacity as General Registrar of Norfolk, VA* <br> City Hall Building, Room 808 <br> 810 Union Street <br> Norfolk, VA 23510 <br><br> **DONALD PALMER**, <br> *In His Official Capacity as Secretary, State Board of Elections,* <br> Washington Building, First Floor <br> 1100 Bank Street <br> Richmond, VA 23219 <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO.: 2:10cv75 |

## PROJECT VOTE'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Plaintiff Project Vote/Voting for America, Inc. ("Project Vote") requested that the Court compel Defendants Elisa Long and Nancy Rodrigues to make available for inspection and copying records withheld in violation of the public disclosure provision of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg-6(i) (the "Public Disclosure Provision"). In their opposition to Project Vote's motion, Defendants claim for the first time that two federal statutes, the Military and Overseas Voter Empowerment Act

("MOVE") and the Help America Vote Act of 2002 ("HAVA"), conflict with Project Vote's plain-language interpretation of the NVRA. Defendant Long also raises the same argument from Defendants' Motion to Dismiss that, contrary to the Court's October 29, 2010 ruling, disclosure of voter registration applications is not consistent with the language of the Public Disclosure Provision.

The Court's interpretation of the Public Disclosure Provision is consistent with the purpose and plain meaning of the statute, a fact that is not changed by Defendants' opposition arguments. Defendant Palmer neglects principles of statutory construction in an attempt to use unrelated statutes to attribute a meaning to the Public Disclosure Provision that is not supported by its plain language. Defendant Long rehashes arguments regarding the definitions of terms in the Public Disclosure Provision that this Court has already rejected. Project Vote therefore respectfully requests that the Court grant summary judgment in its favor.

**I.    Since the Meaning of the Public Disclosure Provision is Plain, Analysis of Other Statutes is Neither Necessary Nor Helpful.**

As the Court has recognized, "[w]here the statutory language has a plain meaning, the court's inquiry is complete and it will enforce the statute as written." *Project Vote v. Long*, No. 2:10cv75, 2010 WL 4394945, at *6 (E.D. Va. Oct. 29, 2010). *See also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). In ruling on Defendants' Motion to Dismiss, the Court stated that it could not "agree with the defendants' construction of the Public Disclosure Provision [as prohibiting disclosure of voter registration applications], as it contradicts the statute's plain meaning." *Project Vote*, 2010 WL 4394945, at *7. In deciding

this Motion for Summary Judgment, the plain language of the NVRA should again be the sole factor directing the Court's analysis.

The Court also should not look past the plain meaning of the NVRA in an attempt to "harmonize" the Public Disclosure Provision with other statutes. *See Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009) (when the plain meaning of a statute, the first canon of statutory interpretation, is unambiguous, "this first canon is also the last [and] judicial inquiry is complete"). The "principle that related statutes should be interpreted harmoniously applies only where the plain language of the statute at issue is ambiguous." *United States v. Able Time, Inc.*, 545 F.3d 824, 831 (9th Cir. 2008). In *Able Time*, where construction of the Tariff Act was at issue, the court rejected the defendant's argument that "other sources, such as other statutory language," including language from statutes that were incorporated into or related to the Tariff Act, should be used to interpret the Act's provisions. *Id*. at 829. The court held that "[t]he plain language of the Tariff Act is unambiguous, so related statutes are of limited help . . . The statutory provisions cited by [defendant] are not at issue here." *Id*. at 831. Similarly, this Court should not base its interpretation of the Public Disclosure Provision on statutes that relate to specific voting procedures beyond the scope of the issues in this case.

## II.     There is No Conflict Between MOVE, HAVA, and the Public Disclosure Provision.

Defendants' discussion of the NVRA's relationship with MOVE and HAVA is a mere distraction because these statutes govern distinct aspects of the voting process and do not conflict with the NVRA. While both MOVE and HAVA express concerns about voter privacy, they focus on protecting the secrecy of ballots and votes, not voter registration applications. Project Vote seeks only completed applications, not the additional materials that must be kept secret under MOVE and HAVA, and therefore those statutes are not relevant here.

3

### A. MOVE's Privacy Provisions Cover Only Requests for Voter Forms, Not Completed Voter Registration Applications.

Contrary to Defendants' claim, the security measures in MOVE do not extend to the content of completed and filed voter registration applications. A report by the Senate Committee on Rules and Administration providing a section-by-section analysis of the statute notes that MOVE addresses the difficulties military and overseas voters face in corresponding with election officials. 156 Cong. Rec. S4,513, S4,517 (daily ed. May 27, 2010). The section of MOVE entitled "Designation of means of electronic communication for absent . . . voters" aids enfranchisement of absentee voters by establishing secure means of electronic communication between officials and potential voters aimed at shielding the identity of absentee voters. *See* 42 U.S.C. § 1973ff-1(e). The privacy protections of MOVE are limited to the electronic communications that occur during the "voter registration and absentee ballot application *request processes*." *Id*. § 1973ff-1(e)(6)(A) (emphasis added). The statute requires states to establish procedures to "ensure that the privacy of the identity and other personal data of an absent uniformed services voter or overseas voter who requests or is sent a voter registration application or absentee ballot application . . . is protected *throughout the process of making such request or being sent such application.*" *Id.* § 1973ff-1(e)(6)(B) (emphasis added). For example, the federal request form requires an individual's social security number. *See* Federal Voting Assistance Program, *Registration and Absentee Ballot Request – Federal Post Card Application (FPCA)*, http://www.fvap.gov/resources/media/fpca.pdf (last updated January 24, 2011). MOVE protects this uniquely private information before redaction is possible by ensuring the privacy and security of the electronic transmission of the form. With respect to the completed documents, Congress explicitly protected "the privacy of the contents of absentee ballots," § 1973ff(b)(9)(B), but did not restrict disclosure of completed voter registration applications.

4

Disclosing the completed voter applications of military and overseas voters simply does not "eviscerate the privacy protections" of MOVE, as Defendants claim. Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. at 4. The content of the unredacted application is still protected while it moves through electronic channels, and Project Vote has not requested ballots or any other information that would interfere with the absentee voting process. Nothing in MOVE's text or legislative history indicates a concern that disclosure of voter registration forms will jeopardize the security of the absentee voting process. Rather, disclosure of voter registration applications completed by absentee voters is crucial to ensure that these voters receive the same protection from voter fraud and discrimination as their local counterparts.

> **B. HAVA Protects Provisional Ballots, not Voter Registration Applications.**

HAVA establishes procedures for the casting and counting of provisional ballots. It requires the establishment of "reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by the free access system" that enables provisional voters to discover the status of their vote. 42 U.S.C. § 15482(a)(5)(B). These concerns about the privacy of information stored on the system are based on the recognition that the right to a secret ballot is "one of the fundamental civil liberties of our democracy." *Anderson v. Mills,* 664 F.2d 600, 608 (6th Cir. 1981) (citing *Buckley v. Valeo*, 424 U.S. 1 (1976)). The commentary surrounding HAVA's security requirements for provisional ballots notes the importance of such confidentiality, while recognizing the limited context to which it applies. The Joint Explanatory Statement explains that the provision "[r]equires that . . . the ballot be promptly verified and counted if determined to be valid under State law, and *the voter (and no one else) be able to ascertain whether the ballot was counted (and if not, why not)* through a free-access system and be informed of that option when the ballot

5

is cast." H.R. Conf. Rep. No. 107-730, pt. 1, at 75, *reprinted in* 2002 U.S.C.A.N.N. at 1094-95 (emphasis added). The legislative history indicates that the information regarding individual provisional ballots that is protected under HAVA is not data within a registration application, but rather confirmation of the vote's current status. *Id.* Moreover, HAVA explicitly disavows any effort to "supersede, restrict, or limit the application of" the NVRA, insisting that nothing in HAVA "may be construed to authorize or require conduct prohibited under," *inter alia*, the NVRA. *See* 42 U.S.C. § 15545(a). This provision demonstrates congressional intent to supplement, not displace, the prior statute.

Defendants misconstrue another reference to the NVRA by HAVA at 42 U.S.C. § 15482(a)(5), by claiming that it "expresses Congressional intent that is consistent with the Defendants' interpretation of the Public Disclosure Provision of the NVRA, i.e., one that does *not* mandate public disclosure of completed voter registration applications." Def. Palmer's Mem. in Opp. to Pl.'s Mot. for Summ. J. at 7 (emphasis in original). The referenced portion of the NVRA, section 4(b), actually discusses states that either do not require registration to vote or allow registration on the day of election, and thus do not use provisional ballots. HAVA's reference to this section of the NVRA is irrelevant to the issues in this case. HAVA requires those states that do use provisional ballots to protect the content of those ballots, but places no constraints on disclosure of voter registration applications.

**III.   Disclosure of Redacted Registration Applications Will Not Violate Voter Privacy.**

The core purposes of the NVRA include increasing voter registration and preventing voter fraud. 42 U.S.C. § 1973gg(b). Disclosure of voter registration applications provides no obstacle to the fulfillment of the first aim and actively promotes attainment of the second. *See Project Vote*, 2010 WL 4394945, at *10 ("The court's conclusion regarding the Public

6

Disclosure Provision's plain meaning [as requiring disclosure of voter registration applications] is certainly congruent to the statute's purposes.").

### A. By Seeking Only Applications from which Social Security Numbers Have Been Redacted, Project Vote Has Not Implicated Privacy Concerns.

Throughout this litigation, Project Vote has been clear that it does not seek disclosure of social security numbers. Social security numbers are unique in their heightened privacy implications, as "the harm that can be inflicted from the disclosure of a SSN to an unscrupulous individual is alarmingly and potentially financially ruinous." *Greidinger v. Davis,* 988 F.2d 1344, 1353-54 (4th Cir. 1993) (noting that "the widespread use of SSNs as universal identifiers in the public and private sectors is one of the most serious manifestations of privacy concerns in the Nation") (internal quotations and citations omitted). *See also Project Vote*, 2010 WL 4394945, at *11 ("SSNs are *uniquely* sensitive and vulnerable to abuse, such that a potential voter would understandably be hesitant to make such information available for public disclosure.") (emphasis added).

No such privacy concerns attach to the other types of information contained on Virginia registration applications. Voters do not have a viable privacy interest in their names and addresses, for example, as such information is already public. *See, e.g., Avondale Indus., Inc. v. NLRB*, 90 F.3d 955 (5th Cir. 1996) (disclosing lists containing names and addresses of plaintiff's employees who voted at NLRB sponsored union representative election was not an invasion of personal privacy). In fact, the NVRA already explicitly requires that lists including names and addresses of people to whom notices are sent regarding their removal from the voter roles be subject to disclosure. *See* 42 U.S.C. § 19733gg-6(i)(2).

Other courts have permitted disclosure of voter registration applications with the social security numbers redacted. The Fourth Circuit in *Greidinger* distinguished the disclosure of

7

social security numbers from public disclosure of other registration information. 988 F.2d at 1354. The court stated that "disclosure of . . . an address or date of birth" would promote the NVRA's overall statutory purposes. *Id.* at 1354-55. It is also noteworthy that the Virginia Supreme Court has permitted disclosure of redacted voter registration applications. *See Rivera v. Long*, No. 070274, slip op. (VA Sup. Ct. Feb 8, 2008) (plaintiff was allowed to inspect and copy voter registration applications after redaction of applicants' social security numbers).

Moreover, assembling public information in one place does not make that information private. All of the information requested on the application, including an individual's felony record or a judgment of mental incompetency, is public, and obtainable through publicized channels. *See, e.g., Doe v. Reed*, 130 S. Ct. 2811, 2819-20 (2010) (providing public access to signatory information on referendum petition); *Smith v. Doe*, 538 U.S. 84, 101 (2003) ("Although the public availability of the information may have a lasting and painful impact . . . the fact of [an individual's] conviction [is] already a matter of public record"); Va. Code Ann. §§ 17.1-208, 37.2-1014 (2010) (requiring that the clerk of the circuit court keep any maintained records "open to inspection by any person," and mandating that a copy of the court's findings at a hearing to determine incapacity be "filed by the judge with the clerk of the circuit court"). Where disclosure of each piece of publicly available information, accessible through other forums, implicates no privacy interest, disclosing these same pieces of information, compiled via blanks on a registration form, does not alter the lack of any significant privacy interest at stake.

    **B.    Disclosure of the Information on Voter Registration Applications is Necessary to Further the Purpose of the NVRA.**

The disclosure of voter registration applications is a key element in protecting the integrity of the voter registration process. The Fourth Circuit has recognized the importance of such disclosures in furthering the "compelling state interest in preventing voter fraud."

*Greidinger,* 988 F.2d at 1354 ("Virginia's interest in preventing voter fraud and voter participation could easily be met without the disclosure of the SSN . . . an address or date of birth would sufficiently distinguish among voters that shared a common name."). The Supreme Court has also recognized that the great need to prevent voter fraud trumps any lingering privacy concerns regarding information contained on a registration form. *See Doe*, 130 S. Ct. at 2819-20 (state's strong interest in rooting out fraud and protecting the integrity of the electoral process by promoting transparency and accountability outweighed petitioner's objection that the compelled disclosure of signatory information on referendum petition impermissibly burdened his First Amendment rights); *Storer v. Brown*, 415 U.S. 724, 732-33 (1974) (state has a compelling interest in protecting the integrity of the electoral process). Here, the Court should permit disclosure of the applications.

### III. The Public Disclosure Provision is Not Limited to Records Concerning Removal of Names from Voter Lists.

Once again, Defendants claim that the structure and language of the Public Disclosure Provision indicates that the statute does not contemplate the disclosure of voter registration applications, but only records that pertain to removing voters from registration lists. The Public Disclosure Provision provides that:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) of this section are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

42 U.S.C. § 1973gg-6(i).

As the Court has already held, the plain language of the Public Disclosure Provision authorizes disclosure of both voter registration and removal records. *See Project Vote*, 2010 WL 4394945, at *7-11. The process by which Virginia evaluates individuals for inclusion on the official lists of eligible voters is a "program or activity" conducted for the purpose of ensuring that such lists are accurate and current, an interpretation supported by the language, context, and purpose of the NVRA. *Id*. at *7. Completed voter registration applications are integral to that process and do not fall under either of the Public Disclosure Provision's two exceptions to disclosure. *Id*. at *7-8. Given that the term "shall include" does not limit the types of records subject to disclosure, the Public Disclosure Provision requires that completed voter registration applications be made available for public inspection and copying. *Id.* at *8 n.17.

### A. The Plain Language and Contextual Meaning of "Programs and Activities" Encompasses Registering Voters as well as Removing Voters from Registration Lists.

As Defendant Palmer concedes, this Court has already "found that the terms 'programs and activities' are broad enough to include completed voter registration forms" in addition to records related to voter removal. Def. Palmer's Opp. to Pl.'s Mot. for Summ. J. at 2. Under the plain language of the provision, ensuring the accuracy and currency of eligible voter lists necessitates being able to register new voters as well as delete voters from those lists. *See Project Vote*, 2010 WL 4394945, at *9 (voter registration applications affect "whether a list of eligible voters is current and accurate"). The Court noted, "[t]here is ample support throughout the NVRA . . . for the conclusion that the Public Disclosure Provision is meant to cover records concerning the implementation of voter registration procedures, which by necessity include voter registration applications." *Id.* at *10.

Although the Court did not define all the specific procedures signified by the general terms "programs and activities" in its prior ruling, it suggested that Defendants' narrow interpretation of that phrase as applying only to removal of voters from lists was not supported by the language of the NVRA. *See id.* at *9 (rejecting Defendants' contention that "the Public Disclosure Provision 'arises in the context of the procedure for *removing* voters from registration lists' as not borne out in the statute") (quoting Defs.' Mem. in Supp. of Mot. at 11). As the Court pointed out, every substantive section under 42 U.S.C. § 1973gg, including the section containing the Public Disclosure Provision, discusses methods to increase voter registration. *See id.* at *10 (listing examples of subsections discussing voter registration programs). This pervasive emphasis on voter registration is in keeping with the NVRA's goal of increasing voter participation. *See* 42 U.S.C. § 1973gg(b)(1) (stating that the purpose of the NVRA is "to

establish procedures that will increase the number of eligible citizens" able to vote in federal elections).

The NVRA sections that Defendants cite in their opposition do not support their argument that "programs and activities" refer only to processes facilitating removal rather than registration of voters. Those sections limit the manner in which States may remove individuals from the official lists of eligible voters. *See, e.g.,* 42 U.S.C. § 1973gg-6(a) (prohibiting a State from removing a voter from the voting rolls unless certain conditions are met). The fact that certain subsections within the NVRA deal "specifically and exclusively with voter removal procedures" shows that Congress could and did choose to deal exclusively with voter removal procedures in some sections, but Congress did not similarly limit the scope of the Public Disclosure Provision. *Project Vote*, 2010 WL at 4394945, at *9. The plain language of the Public Disclosure Provision, as well as the context and overall purpose of the NVRA, all indicate that "programs and activities" include voter registration.

### B. The Exceptions Clause Refutes Defendant's Argument that the Public Disclosure Provision Reaches Only those Records Related to Removing Voters from Lists.

The two types of records described in the exceptions to the Public Disclosure Provision at 42 U.S.C. § 1973gg-6(i)(1) (records regarding declinations to register to vote and the identity of voter agencies) concern voter registration, thereby "demonstrating that the Public Disclosure Provision necessarily contemplates records relating to voter registration procedures." *Project Vote,* 2010 WL 4394945, at *8. The Public Disclosure Provision requires that "all records" concerning the accuracy of voting lists be disclosed, bringing voter registration applications within its reach. 42 U.S.C. § 1973gg-6(i)(1). Those "records which Congress did not want to be encompassed by the term 'all' were specifically identified in the exceptions . . . and voter

12

registration applications do not fall within either of those exceptions." *Project Vote,* 2010 WL 4394945, at *8.

Defendants once again claim that the exempted records do not relate to voter registration and are only mentioned to ensure that they will not be disclosed. The Court previously rejected this argument, noting that "if the defendants' contention were true, the inclusion of those exceptions would be superfluous because it would mean that the exceptions refer to records that were never within the purview of the Public Disclosure Provision in the first place." *Id.*; *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005) (stating that "[i]t is a classic canon of statutory construction that courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous"). Given that the exceptions clause demonstrates Congressional intent to include all records related to voter registration activities not specifically excepted, the plain language of the Public Disclosure Provision compels disclosure of the completed voter registration applications Plaintiff seeks.

### C. The Term "Shall Include" Introduces Examples of Records Subject to Disclosure without Limiting the Types of Records Covered by the Public Disclosure Provision.

The Public Disclosure Provision employs the phrase "shall include" not as a term of limitation, as Defendants claim, but as a term of enlargement. Under Defendants' interpretation, the only records subject to disclosure are those specifically named in 42 U.S.C. § 1973gg-6(i)(2), a list that does not include voter registration applications. *See* Def. Long's Opp. to Pl.'s Mot. to Dismiss at 9-10. Defendants claim that interpreting this section as a floor rather than a ceiling renders it meaningless because, under such an interpretation, only the broad language of "all" in subsection 6(i)(1) has any meaning. *Id*. As the Court previously held, however, "there is no indication in the statute that the use of the term 'shall include' is meant to limit the term 'all

13

records.'  Instead, this language is not exhaustive and merely explains that those types of records, among others, are subject to disclosure." *Project Vote*, 2010 WL 4394945, at *8 n.17.  *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.") (citations omitted);  *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 337-38 (4th Cir. 2005) (holding that the term "shall include" was not exhaustive in light of the breadth of other statutory provisions).

The Court also noted that Defendants' argument fails because, if it were true, "the term 'all' would be rendered meaningless and the exceptions [to the Public Disclosure Provision] would be superfluous, as they are not the 'type' of records listed in subsection 6(i)(2)." *Project Vote*, 2010 WL 4394945, at *8 n.17.  Under Defendants' strained interpretation, Congress intended to exclude from the Public Disclosure Provision records that were never covered by the provision in the first place.  The plain language of the provision demonstrates instead that subsection 6(i)(2) is not an exhaustive list of the records subject to disclosure that excludes voter registration applications, but merely an illustrative list.

## **CONCLUSION**

For the foregoing reasons, Project Vote is entitled to judgment as a matter of law, and the Court should therefore grant its motion for summary judgment.

Respectfully submitted,

/s/ Ryan Malone
Ryan M. Malone (VA Bar # 48526)
Augustine M. Ripa (VA Bar #77244)
David O. Stewart (admitted *pro hac vice*)
Douglas H. Hallward-Driemeier (admitted *pro hac vice*)
ROPES & GRAY LLP
700 12th Street NW, Suite 900 East
Washington D.C. 2005
TEL: 202-508-4669
FAX: 202-383-8322
Ryan.Malone@ropesgray.com
Counsel for Plaintiff
Project Vote/Voting for America, Inc.

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 16th day of March, 2011, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                         /s/ Ryan Malone
                                         Ryan M. Malone