

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PROJECT VOTE/VOTING FOR AMERICA, INC.,

                    Plaintiff,

v.                                    CIVIL No. 2:10cv75

ELISA LONG, in her Official Capacity
as General Registrar of Norfolk, Virginia,

and

DONALD PALMER, in his Official Capacity
as Secretary, State Board of Elections,

                    Defendants.

## OPINION AND ORDER

The court lifted its stay of this case on July 20, 2012, which stay had been issued by Order of August 1, 2011.  The court then directed the parties to file responses concerning the Consent Order entered by the court on August 10, 2011, staying consideration of Project Vote/Voting for America, Inc.'s ("Project Vote") August 3, 2011, Motion To Recover Attorneys' Fees and Costs ("Motion for Attorneys' Fees").  Project Vote filed its response ("Project Vote's Response") on July 23, 2012, requesting that the court lift the stay of its Motion for Attorneys' Fees and award a total of $349,317.05 in fees and $657.00 in costs.  Defendants filed a Joint Motion for Extension of Time, also on July 23, 2012, requesting additional time to respond to Project Vote's motion.  The court

lifted its stay of the Motion for Attorney's Fees on July 26, 2012, and set new deadlines for Defendants' response and any reply by Project Vote. Defendants filed their Response in Opposition on August 3, 2012, and Project Vote filed its Reply on August 10, 2012. The matter is now ripe for review.

## I.  Factual and Procedural History

The relevant factual history is set forth in detail in the court's October 29, 2010, Opinion, and need not be repeated in full herein. See Project Vote/Voting for Am., Inc. v. Long, 752 F. Supp. 2d 697, 698-701 (E.D. Va. 2010). In brief review, Project Vote and Advancement Project, a national civil and voting rights organization with which Project Vote works, sought to inspect and obtain copies of

> the completed voter registration applications of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general election, and also other documents, such as documents identifying the reasons the applications were rejected.

Compl. ¶ 15 (internal quotation marks omitted). This request was made pursuant to the National Voter Registration Act's ("NVRA") Public Disclosure Provision, 42 U.S.C. § 1973gg-6(i)(1) (hereinafter referred to as the "Public Disclosure Provision"). The Defendants did not permit Project Vote to inspect or copy these records (collectively referred to as the "Requested Records"),

2

purportedly because Virginia Code § 24.2-444 prohibited their disclosure, Compl. ¶ 17, and the Public Disclosure Provision did not require that they be made available for inspection and photocopying. Id. ¶ 22.

In the Complaint, Project Vote alleged that the NVRA's Public Disclosure Provision required that the Requested Records be available to the public for inspection because they are records "'concerning the implementation of programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" Id. ¶ 29 (quoting 42 U.S.C. § 1973gg-6(i)(1)). Additionally, to the extent that the Virginia statute limited the availability of the Requested Records to the public for inspection and photocopying, Project Vote argued it was superseded by the NVRA, pursuant to the Supremacy Clause of the United States Constitution. Therefore, Project Vote asked the court to: 1) declare that Defendants were in violation of the NVRA; 2) declare that the NVRA preempted Virginia Code § 24.2-444, and any other Virginia law or regulation stating the same; 3) "[p]ermanently enjoin Defendants from refusing to permit access to any requesting party for copy and/or inspection of voter registration applications and related records, as sought by Project Vote in this matter"; and 4) award Project Vote the costs incurred in pursuing this action, as authorized by 42 U.S.C. § 1973gg-9(c). Id. at 11.

The court issued its Opinion granting in part Project Vote's Motion for Summary Judgment on July 20, 2011.  See Project Vote/Voting for Am., Inc. v. Long, 813 F. Supp. 2d 738 (E.D. Va. 2011). The court found "that the NVRA's Public Disclosure Provision, 42 U.S.C. § 1973gg-6(i)(1), grants the plaintiff access to completed voter registration applications with the voters' SSNs redacted for inspection and photocopying."  Id. at 743.  The court issued a permanent injunction requiring disclosure of completed voter registration applications, but denied Project Vote's Motion for Summary Judgment insofar as Project Vote requested retrospective relief.  Id. at 744-45.  The court stayed its judgment on August 1, 2011, pending the outcome of Defendant's appeal of its decision.  On June 15, 2012, the United States Court of Appeals for the Fourth Circuit affirmed this court's opinion.  See Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331 (4th Cir. 2012).  The Fourth Circuit's mandate issued on July 9, 2012.

## II. Legal Standards

Pursuant to 42 U.S.C. § 1973gg-9(c), "[i]n a civil action under this section the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs."  Courts apply the same standards applicable to other federal civil rights fee shifting statutes when considering an award under this section.  See, e.g., Project Vote v. Blackwell,

4

No. 1:06cv1628, 2009 U.S. Dist. LEXIS 34571, at *15 & n.7 (N.D. Ohio Mar. 31, 2009); Nat'l Coalition for Students with Disabilities v. Bush, 173 F. Supp. 2d 1272, 1276 (N.D. Fl. 2001). As such, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976)). The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. Id. at 437.

The decision to award attorneys' fees, and the extent of those fees, "rests, of course, within the sound discretion of the trial judge." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (Ellis, J.) (internal quotation omitted). In determining a reasonable attorneys' fee, the proper first step is to calculate the lodestar amount, which results from multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). When making this calculation, the court must exclude any hours that are "excessive, redundant, or otherwise unnecessary," as such hours are not reasonably expended on the litigation. Hensley, 461 U.S. at 434. This process requires the use of the same "billing

judgment" that guides a lawyer in private practice in billing his client. Id.

A properly calculated lodestar figure is presumed to be a reasonable fee. See Del. Valley Citizens' Council for Clean Air, 478 U.S. at 565. However, the court's discretion to award fees necessarily "encompasses the ability to depart from the lodestar in appropriate circumstances." Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629 (4th Cir. 1995). The court may adjust a fee upward or downward from the lodestar based on the twelve factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[1] as well as other considerations. Hensley, 461 U.S. at 434.

### III. Analysis

Project Vote seeks an award of attorneys' fees in the amount of $349,317.05 and costs and expenses in the amount of $657.00. See Project Vote's Resp. 4. Defendants object to many aspects of Project Vote's request, but their arguments can be summarized into three main

---

[1]     The twelve factors identified in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

6

contentions: (1) the hourly rates cited by Project Vote are not reasonable in the relevant legal community; (2) Project Vote's request contains unreasonable or duplicative fee requests; and (3) Project Vote's documentation is insufficient for the court to ascertain the number of hours reasonable expended on the litigation. See Resp. Opp'n 2-15. Defendants do not object to an award of fees in this case, nor do they contest whether Project Vote was the prevailing party in the litigation. As such, an award of attorneys' fees and expenses is appropriate in this case. The court will determine the amount of the award after examining each of Defendants' objections to Project Vote's proposed lodestar calculation in turn.

### A.   Reasonable Hourly Rate

In Project Vote's Response, as well as its August 3, 2011, Memorandum of Law in Support of Plaintiff's Motion to Recover Attorneys' Fees ("Memorandum in Support"), Project Vote argues that the Laffey Matrix, which reports prevailing market rates for attorneys in Washington, D.C., provides a guideline for reasonable attorneys' fees in this case. See Project Vote's Resp. 4; Mem. Supp. 9-11. In contrast, Defendants argue that Project Vote has not produced sufficient evidence in support of its fee request, and that a reasonable hourly rate should be calculated by looking at the local legal market, rather than the Laffey Matrix. See Resp. Opp'n 4-9.

7

The hourly rate requested by the prevailing party must be reasonable.  See Rum Creek Coal Sales, Inc., v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (citing Hensley, 461 U.S. at 433).  Courts ordinarily look to the "prevailing market rates" charged by lawyers of similar capabilities and experience "in the relevant community." Blum, 465 U.S. at 895-96.  Prevailing parties bear the burden of demonstrating that their requests fall within the prevailing market rates, which can be accomplished through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine "actual rates which counsel can command in the market."  Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987).  Affidavits from the prevailing party alone are not sufficient.  See Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990).  The relevant community for determining the market rate is ordinarily the district where the case was tried.  Rum Creek, 31 F.3d at 175.  However, rates in other localities can be considered "[i]n circumstances where it is reasonable to retain attorneys from other communities."  Id.  Such circumstances are present "when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice."  Id. at 179

8

(quoting National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir. 1988)).

Here, Project Vote submitted affidavits from its own attorneys, as well as the Laffey Matrix, in support of its requested rates, which are as follows:

Table 1: Project Vote's Requested Hourly Rates

| Timekeeper | Position | Hourly Rate 6/1/09 – 5/31/10 | Hourly Rate 6/1/10 – 5/31/11 | Hourly Rate 6/1/11 – 5/31/12 |
|---|---|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | Partner | $569.00 | $589.00 | $609.00 |
| Stewart, David Ropes & Gray | Counsel | $686.00 | $709.00 | $734.00 |
| Malone, Ryan Ropes & Gray | Associate | $505.00 | $522.00 | $540.00 |
| Ripa, Augustine Ropes & Gray | Associate | $285.00 | $294.00 | $374.00 |
| Idilbi, Jason Ropes & Gray | Associate | $285.00 | $294.00 | $374.00 |
| Beauregard, Sheryl Ropes & Gray | Paralegal | $155.00 | $161.00 | $166.00 |
| Antzoulatos, Sophia Ropes & Gray | Paralegal | $155.00 | $161.00 | $166.00 |
| Sheffield, Yolanda Project Vote | Attorney | $349.00 | $361.00 | $374.00 |
| Mellor, Brian Project Vote | Attorney | $686.00 | $709.00 | $734.00 |

Project Vote Resp. Ex. E.  The Laffey Matrix was established in Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), and is frequently used by the United States District Court for the District of Columbia, and other courts, as a "useful starting point" for determining the prevailing hourly rates for attorneys in

9

Washington, D.C.  See Grissom v. Mills Corp., 549 F.3d 313, 322 (4th Cir. 2008).  Notably, Project Vote did not submit any other affidavits concerning hourly rates in the Eastern District of Virginia.  Project Vote argued it "acted reasonably by retaining counsel in Washington, D.C., whose office was located in close proximity to theirs, who had specific civil rights and constitutional law expertise, and who were willing to take on a case of first impression."  Mem. Supp. 10.  In its Reply, Project Vote made the additional argument, not found in its first two filings or the supporting declaration from its senior counsel, Brian Mellor, that Project Vote's relationship with counsel, Ropes & Gray, in other cases factored into its choice to use the firm.  See Reply 3.

In turn, Defendants argue that the Laffey Matrix is irrelevant in assessing reasonable fees in this case, as the relevant legal market is the Eastern District of Virginia, not Washington, D.C.  See Resp. Opp'n 6-9.  Defendants argue that Project Vote has not made any showing that competent counsel could not be retained for this case from within the jurisdiction, or that choosing counsel from Ropes & Gray in Washington, D.C., constituted a reasonable decision. Further, in addition to the affidavits of Defendants' attorneys generally concerning their roles/participation in the case, see Resp. Opp'n Exs. 2 & 3, Defendants provide specific evidence, through an affidavit from trial attorney Robert L. Samuel, a partner based

10

in a local office of a large Virginia law firm with multiple offices throughout the Eastern District of Virginia, and who himself has over thirty (30) years of continuous practice in the courts of southeastern Virginia, including practice in this District and the Fourth Circuit Court of Appeals. See Resp. Opp'n Ex. 1 ¶¶ 2-4.[2] Mr. Samuel represents that the prevailing market rates within the District are as follows:

**Table 2: Defendants' Evidence of Reasonable Hourly Rates**

| Timekeeper | Position | Experience | Hourly Rate |
|---|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | Partner | 18 years (Partner for 2) | $275-300 |
| Stewart, David Ropes & Gray | Counsel | 34 years (Partner for 23) | $350-400 |
| Malone, Ryan Ropes & Gray | Associate | 10 years | $275-300 |
| Ripa, Augustine Ropes & Gray | Associate | 4 years | $180-$225 |
| Idilbi, Jason Ropes & Gray | Associate | 4 years | $180-$225 |
| Sheffield, Yolanda Project Vote | Attorney | 7 years | $180-$225 |
| Mellor, Brian Project Vote | Attorney | 29 years | $350-400 |

See Resp. Opp'n Ex. 1 ¶ 11.[3]

---

[2]    Mr. Samuel's credentials are set forth in full in his affidavit. See Resp. Opp'n Ex. 1 ¶¶ 2-6; infra note 3.

[3]    Mr. Samuel stated that his own hourly billing rate ranges between $285.00 and $395.00 an hour. Resp. Opp'n Ex. 1 ¶ 8. Neither Mr. Samuel's billing rates or his credentials are challenged by Project Vote, nor is his opinion of the reasonable prevailing hourly market rates within the Eastern District of Virginia, as set forth in the table above. See id. Ex. 1 ¶ 11. Instead, Project Vote's evidence and arguments are based on the grounds discussed supra at

In reviewing the evidence from the parties, the court agrees with Defendants that Project Vote's requested hourly rates do not represent the prevailing market rate in the relevant community of the Eastern District of Virginia.  Project Vote has failed to set forth specific evidence that the hourly rates it seeks coincide with local prevailing market rates; indeed, Project Vote has submitted no evidence at all on market rates within this District.  Further, Project Vote's evidence in the form of the Laffey Matrix is insufficient as a reliable indicator of reasonable rates for a case proceeding outside of Washington, D.C.  Cf. Grissom, 549 F.3d at 323 ("Moreover, the Laffey Matrix is also insufficient to carry Plaintiff's burden of proof [for a case in Reston, Virginia.]").[4] The court's determination thus turns on whether Project Vote's choice to retain counsel from outside the District was "reasonable," and counsel should be awarded Washington, D.C., hourly rates.

Brian Mellor of Project Vote cited Ropes & Gray's proximity to its office, constitutional and civil rights expertise, and willingness to take a case of first impression as the three reasons

9-10.  No countervailing affidavits from any attorneys, outside of those involved in this case, were submitted by Project Vote to support the reasonable prevailing hourly market rates in this District.  See Project Vote Resp. Ex. E; supra at 9-10.

[4]    Reston, Virginia, is located in northern Virginia within the Alexandria Division of this court, which geographic area is contiguous with Washington, D.C.

justifying the decision to retain counsel in Washington, D.C.  Mem.
Supp. 10.  However, Project Vote has made no showing that it was
unable to find local counsel -- charging prevailing market rates --
competent and willing to handle this case.  See Rum Creek, 31 F.3d
at 179; National Wildlife, 859 F.2d at 317.  Project Vote argues in
its Reply that such proof is not required by Rum Creek and National
Wildlife.  See Reply 3.  Such an argument misses the point; Project
Vote, in applying for a fee, has "the burden to make out the
reasonableness of [its] hourly rate with specific evidence."
Newport News Shipbuilding & Dry Dock Co. v. Holiday, 591 F.3d 219,
230 n.12 (4th Cir. 2009).  The Fourth Circuit has confirmed that the
first step in assessing the reasonableness of retaining non-local
counsel is asking "if extrajurisdictional counsel rendered services
that were truly available in the visited market."  See id. at 229.
Project Vote's idle speculation that the case "was likely to be
politically distasteful for local counsel" does not satisfy its
burden.  Reply 4.[5]  Regardless of the form of the proof, Project Vote

---

[5]     The court notes that the Eastern District of Virginia
encompasses a far broader range of localities other than the City
of Norfolk and the surrounding localities within the Norfolk Division
of the court.  Further, Project Vote's comparison of this case to
Rum Creek is misplaced.  Counsel in Rum Creek, based in Richmond,
Virginia, requested a "substantial portion of the fees" for appellate
work occurring before the Fourth Circuit in Richmond.  Rum Creek 31
F.3d at 179.  Moreover, the political considerations and the many
complex legal and constitutional issues in Rum Creek far exceeded
what was at issue in this case.  See id. at 172-74, 179 (discussing

has not produced any specific evidence from which the court can conclude that local counsel with the requisite skills did not exist within the Eastern District of Virginia, or if such counsel existed that they could not, or would not, have taken the case.  Project Vote has thus failed to make a satisfactory showing that the choice to retain counsel from outside the District was reasonable.

As such, the court finds that reasonable hourly rates for this case are those charged by comparable counsel within the Eastern District of Virginia.[6]  Because Project Vote has not put forward its own evidence of rates within the District, or challenged Defendants' evidence, the court adopts the following hourly rates, based on the high-end[7] of the ranges attested to by Mr. Samuel:

[CONTINUED ON PAGE 15]

---

the high profile nature of the suit, brought against a governor and the police "in the middle of a wellpublicized [sic] coal miners' strike").  The profile and proceedings of the case at bar simply do not rise to the level of Rum Creek.

6    See infra note 7.

7    The court finds, based on the evidence presented and its own over thirty (30) years of practice and judicial experience within the Eastern District of Virginia and the Fourth Circuit, that the ranges reflect market rates within the District, and additionally that selection of the high-end comports with the Johnson factors. See discussion infra Part IV.

14

Table 3: Court's Finding of Reasonable Hourly Rates

| Timekeeper | Position | Reasonable Hourly Rate |
|---|---|---|
| Hallward-Driemeier, Doug<br>Ropes & Gray | Partner | $300 |
| Stewart, David<br>Ropes & Gray | Counsel | $400 |
| Malone, Ryan<br>Ropes & Gray | Associate | $300 |
| Ripa, Augustine<br>Ropes & Gray | Associate | $225 |
| Idilbi, Jason<br>Ropes & Gray | Associate | $225 |
| Beauregard, Sheryl<br>Ropes & Gray | Paralegal | $100[8] |
| Antzoulatos, Sophia<br>Ropes & Gray | Paralegal | $100[9] |
| Sheffield, Yolanda<br>Project Vote | Attorney | $225 |
| Mellor, Brian<br>Project Vote | Attorney | $400 |

## B.    Unreasonable and Duplicative Fee Requests

Defendants next argue that Project Vote's fee request includes numerous entries that are "excessive, redundant, or otherwise unnecessary," and represent overstaffing and duplicative billing. See Resp. Opp'n 10 (quoting Hensley, 461 U.S. at 434). Defendants argue that Project Vote's attorneys, who took the case pro bono, "seem[] to have used this case as a training exercise, without proper

---

[8]     Mr. Samuel did not provide an estimate of prevailing market rates for paralegals within the District, but the court finds that $100 an hour, which represents a comparable reduction from Project Vote's initial request and comports with the court's experience concerning local hourly rates, is appropriate.

[9]     See supra note 8.

billing discretion as to the amount of hours expended." Id. at 12. Defendants note that only one attorney represented Defendants at almost all proceedings. Id. at 11 n.2; id. Ex. 2 ¶ 5; id. Ex. 4 ¶ 5. Defendants also submit as evidence Mr. Samuel's affidavit, in which he states "[t]here is a great deal of duplication and overstaffing" in Project Vote's fee request. Resp. Opp'n Ex. 1. ¶ 12.

"The court must necessarily exclude any hours that are . . . not reasonably expended on the litigation. Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 670 (4th Cir. 2004). "[The Fourth Circuit has] been sensitive to the need to avoid use of multiple counsel for task where such use is not justified by the contributions of each attorney." Rum Creek, 31 F.3d at 180. As such, the court will "award fees for the time of one attorney when an issue does not require the attention of multiple lawyers." Cox v. Reliance Std. Life Ins. Co., 179 F. Supp. 2d 630, 636 (E.D. Va. 2001) (Brinkema, J.).

### 1. Hearing on Motion to Dismiss

Chronologically, Defendant's first specific objection on this ground is to Project Vote's billing related to the July 30, 2010, hearing on Defendant's Motion to Dismiss, found in Phase 3 of Exhibit E to Project Vote's Motion for Attorney Fees. See Resp. Opp'n 11 n.2. Project Vote had three attorneys attend the motion

16

hearing in Norfolk, Virginia.[10]   The court agrees with Defendants'

contention that billing for attendance by three attorneys, including

two similarly experienced associates, and the accompanying travel

required from counsel's Washington, D.C. office, is duplicative and

does not represent the type of "billing judgment" of private

practice.  See Hensley, 461 U.S. at 434.  The court expects that the

presence of two attorneys would have been more than sufficient to

handle oral argument;[11] as such, the court reduces Augustine Ripa's

time by 14.50 hours in Phase 3.

### 2.   Rule 26(f) Telephonic Conference

Defendants next point to the time entries entered by three of

Project Vote's attorneys, found in Phase 4 of Exhibit E to Project

Vote's Motion for Attorney Fees, concerning participation in the

Federal Rule of Civil Procedure 26(f) Telephonic Conference.[12]   See

---

[10]   The entries related to travel to and from, and attendance at,
the motion hearing on July 30, 2010, are summed as follows: Augustine
Ripa billed 14.5 hours; Jason Idilbi billed 14 hours; and Ryan Malone
billed 24 hours.   See Mot. Attorneys' Fees Ex. E at 11-12.   By
contrast, Defendants each had only one attorney attending all
hearings before this court.   See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3
¶4.

[11]   To be clear, with respect to this Part III.B.1, as well as with
respect to infra Part III.B.3, the court did not reduce any time spent
preparing in advance for the relevant hearings, but only time
expended on the days traveling and attending the hearings.

[12]   The entries related to attendance of the call on
November 22, 2010, are summed as follows: Augustine Ripa billed 1.75
hours; Jason Idilbi billed .75 hours; and Ryan Malone billed 3 hours,

Resp. Opp'n 11. The court agrees with Defendants' contention that the participation of three attorneys for such a routine pre-trial matter is duplicative. As such, the court reduces Augustine Ripa's time by 1.75 hours and Jason Idilbi's time by 0.75 hours in Phase 4.

### 3. Rule 16(b) Scheduling Conference

Defendant's next object to Project Vote's billing related to the Federal Rule of Civil Procedure 16(b) Scheduling Conference. See Resp. Opp'n 11. Project Vote had three attorneys attend the Rule 16(b) Conference in Norfolk, Virginia.[13] Once again, the court agrees with Defendants' contention that the participation of three attorneys for such a routine, administrative pre-trial matter is duplicative, especially in light of the travel time required from counsel's Washington, D.C., office. As such, the court further reduces Augustine Ripa's time by 21.50 hours and Jason Idilbi's time by 20 hours in Phase 4.

---

including the call and other tasks. See Mot. Attorneys' Fees Ex. E at 14-15. By contrast, Defendants each had only one attorney participating in the Rule 26(f) Telephonic Conference. See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3 ¶ 4.

[13] The entries related to travel to and from, and attendance at, the Scheduling Conference on November 30, 2010, are summed as follows: Augustine Ripa billed 21.50 hours; Jason Idilbi billed 20 hours; and Ryan Malone billed 21 hours. See Mot. Attorneys' Fees Ex. E at 14-16. By contrast, Defendants each had only one attorney participating in the Rule 16(b) Scheduling Conference. See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3 ¶ 4.

### 4.   Fourth Circuit Oral Argument

Defendant's final specific objection [14] on the grounds of duplicative billing concerns Project Vote's billing for the May 17, 2012, hearing and argument before the Fourth Circuit.  See Resp. Opp'n 11 & n.2.  Project Vote had two attorneys conduct extensive preparation for oral arguments on appeal, separate and apart from counsel's work on the appellate briefing. [15]  Defendants' again cite Mr. Samuel's affidavit as evidence of the unreasonableness of this preparation.  See Resp. Opp'n Ex. 1 ¶ 12; see also id. ¶ 3 (setting forth Mr. Samuel's appellate experience). [16]  Project Vote in turn says such preparation by a junior associate is preferred, and that the time sought is already discounted as it "is not seeking fees for hours billed by first and second year associates who worked

---

[14]   Defendants do briefly mention the court's hearing on the Motion for Summary Judgment and Status Conference, held on June 10, 2011; however, the court does not find the attendance of two attorneys to be excessive.  But see discussion infra Part III.B.5 (discussing travel billing).

[15]   Augustine Ripa billed entries between April 17, 2012, and May 17, 2012, related to preparation for, and attendance at, oral argument before the Fourth Circuit, totaling 91.7 hours.  See Project Vote's Resp. Ex. C at 3.  Moreover, Ms. Ripa's April 17, 2012, entry of 5.0 hours related to preparation of the appeal also describes administrative, and not legal, preparatory work.  Ryan Malone billed entries between May 5, 2012, and May 17, 2012, totaling 76.8 hours. See id. at 4.

[16]   See supra note 2.

on the appeal."[17] Reply 8. Unlike Defendants' other specific objections, the court does not think extensive preparation by two attorneys for oral argument on appeal is categorically duplicative, nor does the court find that Mr. Malone's preparation was excessive in and of itself. However, the court agrees that the extent of preparation of Ms. Ripa, "who did not conduct oral argument," exceeds reasonableness and ordinary billing discretion. As such, the court reduces Augustine Ripa's time by 20 percent, or 18.3 hours, in Phase 6.[18]

### 5. Travel Billing

Defendants' final objection concerning the unreasonableness of Project Vote's fee request relates to attorney travel. Defendants argue that the decision to charge "full rate for hours spent traveling to and from Washington, D.C. . . . further demonstrates Plaintiff's counsel's 'apparent absence of billing judgment.'" Resp. Opp'n 12 (citing Burston v. Virginia, 595 F. Supp. 644, 651 (E.D. Va. 1984) (Merhige, J.)). Defendants cite several cases for the proposition that "plaintiffs should not recover the same fee for travel time as they recover for active legal work." Rosenberger v. Rector and

---

[17] The court has not, however, been provided any records showing the tasks or amount of time Project Vote excluded from its fee request.

[18] Such a reduction credits Ms. Ripa with a comparable number of preparatory hours as Mr. Malone, who actually conducted oral argument before the Fourth Circuit.

Visitors of Univ. of Va., No. 91-0036-C, 1996 U.S. Dist. LEXIS 13799, at *20 (W.D. Va. Sept. 17, 1996).   Defendants argue that the appropriate hourly rate for attorney travel time is one fifth of an attorney's regular billing rate, citing Sun Publ'g Co. v. Mecklenburg News, Inc., 594 F. Supp. 1512, 1520 (E.D. Va. 1984).   Resp. Opp'n 13.

The court agrees with Defendants that counsel should not recover their full market rate for travel from their offices in Washington, D.C., to Norfolk and Richmond, and that failure to reduce this time indicates a lack of billing judgment.   Cf. Sandbeck v. Reyes, No. 1:11cv0761, 2012 U.S. Dist. LEXIS 54068, at *8 n.2 (E.D. Va. Apr. 17, 2012) (Anderson, J.) ("The reduction of the hourly rate for travel time from $350.00 to $100.00 is indicative of plaintiff's good faith efforts to apply for a reasonable amount of fees and costs."). The court does not necessarily agree with Defendants that an 80 percent reduction from typical billing rates is always required; however, such an argument is academic in this case, as the court cannot determine with any accuracy the amount of time that Project Vote's counsel actually spent traveling.   In the logs submitted by Project Vote, almost all travel entries are combined with other, legal tasks.   See, e.g., Mot. Attorneys' Fees Ex. E at 11 (describing a 6.0 hour July 29, 2010, entry for Jason Idilbi as "[f]inalize preparation for departure to hearing, traveled to Norfolk; attended team strategy discussions to prepare for hearing"); id. Ex. E at 12

(describing a 14.50 hour entry on the same day for Ryan Malone as "[t]ravel from Washington to Norfolk, prepare for the hearing"). These generalized entries combining tasks are simply not sufficient, proper documentation of travel time. As a result, the court will consider the billed travel time when assessing the reduction the court applies due to insufficient documentation. See discussion infra Part III.C.

### C. Insufficient Documentation of Fees

Defendants' remaining objections to Project Vote's fee request focus on the documentation provided to the court. Defendants characterize Project Vote's evidence as providing the court with "no way . . . to accurately determine the reasonableness of the time expended." Resp. Opp'n 15. Specifically, Defendants, and Mr. Samuel in his affidavit, point to counsel's practice of "lumping" multiple tasks into the same time entry. See id. at 14; id. Ex. 1 ¶ 12. Project Vote, in turn, argues that "block billing" is not prohibited by binding authority, and that the provided entries are sufficiently specific for the court. Reply 8.

While perhaps "block billing" is not prohibited, it simply does not provide the court with a sufficient breakdown to meet Project Vote's burden to support its fee request in specific instances. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without

22

specifying the amount of time spent on each particular task."
Guidry, 442 F. Supp. 2d at 294. Courts may reduce a fee award when
"lumping" prevents an accurate assessment of the reasonableness of
the fee request by either identifying hours that are not sufficiently
documented or "by reducing the overall fee award by a fixed percentage
or amount based on the trial court's familiarity with the case, its
complexity, and the counsel involved." See id. Thus, the issue is
not whether the court classifies Project Vote's timekeeping as
demonstrating either "lumping" or "block billing," but whether
Project Vote has satisfied its burden of providing the court with
evidence from which the court can assess the reasonableness of the
time requests.

In reviewing the time logs, the court did not find a single
instance in which a timekeeper recorded multiple entries for a single
day; instead, only the total amount of time for each day is reported,
with no breakdown of how that time was spent among often as many as
four or five distinct tasks. See, e.g., Mot. Attorneys' Fees Ex. E
at 15 (November 22, 2010, entry for Ryan Malone: "Attend 26(f)
conference; begin plan for summary judgment motion; research local
rules and privacy issues; meet with team regarding strategy."). The
court's concern is heightened by the repeated practice of multiple

attorneys reporting time for the same task.[19] The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time. Instead, in light of the inexact documentation and the resulting inability of the court to properly assess the reasonableness of the time requested, as well the concerns about the reasonableness of travel billing set forth supra in Part III.B.5, the court will apply a fixed percentage reduction of 10 percent to the fee award in this case. Such reduction will be taken after accounting for the specific hourly reductions the court discussed supra in Parts III.B.1 through III.B.4.

## IV. Johnson Factors

After arriving at the lodestar figure, the district court still must assess "whether that figure must be adjusted, upward or downward, on the basis of the circumstances in the case, including the Johnson factors." Guidry, 442 F. Supp. 2d at 294-95. The court

---

[19]    Compare Mot. Attorneys' Fees Ex. E at 3 (Jason Idilbi records "[d]rafted first draft of complaint" on December 9, 2009), with id. at 1 (Augustine Ripa records "draft and revise complaint" each day from December 7-10, 2009). Tasks within projects can obviously be divided, but due to the lack of specificity in billing, the court is unable to assess whether these and similar entries are a result of efficient division, or instead duplicative or otherwise unreasonable. The court notes this is just one example, and similar overlapping entries are found for drafting of the Response to Defendants' Motion to Dismiss, preparing for the hearing on the Motion to Dismiss, and other tasks. See id. Ex. E.

will not belabor these factors[20] in light of the lengthy analysis
above, which addressed, among others, the time and labor required
to litigate the suit and the customary fee for such services.
However, the remaining Johnson factors applicable in this case weigh
in favor of a fully compensatory award to Project Vote.  Courts
repeatedly emphasize that the result of the litigation is one of the
most important factors, see, e.g., Nigh v. Koons Buick Pontiac GMC,
Inc., 478 F.3d 183, 190 (4th Cir. 2007 ) (considering "the extent
of the relief obtained . . . particularly important when calculating
reasonable fees"), and it is incontrovertible that Project Vote
prevailed and obtained a permanent injunction in the underlying suit.
Additionally, interpretation of the NRVA's requirement to disclose
voter registration forms was an issue of first impression, which
weighs in favor of full compensation.  See Johnson, 488 F.2d at 718.
The court has taken into account these considerations and all of the
Johnson factors, and finds that the full fee requested by Project
Vote, after applying the adjustments to the reasonable hourly billing
rates and billing times the court detailed supra in Part III when
calculating the lodestar figure, is appropriate in this case.

The full details of the court's calculations adjusting Project
Vote's requested attorneys' fee award are set out in Appendix A, which
is attached hereto and made a part of this Opinion and Order.  After

---

[20]     See supra note 1 (listing factors).

reducing the hourly rate, as detailed supra in Part III.A, and making the adjustments to the billable time, as detailed supra in Parts III.B and III.C, the court **FINDS** that a total attorneys' fee award of $184,223.25 is reasonable in this case.

### V.   Costs

Project Vote also requests $657.00 in costs.   Litigation expenses are recoverable under the statute, see 42 U.S.C. § 1973gg-9(c), and Defendants have noted no objection to Project Vote's request.   The court agrees with Project Vote that its request is "very limited," and finds that $657.00 in costs is reasonable in this case.

### VI.   Conclusion

For the foregoing reasons, the court **GRANTS** Project Vote's Motion for Attorneys' Fees, and awards Project Vote $184,223.25 in attorneys' fees and $657.00 in costs.   The Clerk **SHALL** forward a copy of this Opinion and Order to counsel for the parties.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 22, 2012

26

## Appendix A: Court's Calculation of Attorneys' Fees

| Timekeeper | Total Reported Hours | Duplicative Hours | Adjusted Hours | Total Hours After 10% Reduction | Hourly Rate | Total Fee Award |
|---|---|---|---|---|---|---|
| Hallward-Driemeier, Doug   Ropes & Gray | 17.25 | 0 | 17.25 | 15.525 | $300 | $4,657.50 |
| Stewart, David Ropes & Gray | 0.50 | 0 | 0.50 | 0.45 | $400 | $180.00 |
| Malone, Ryan Ropes & Gray | 253.00 | 0 | 253.00 | 227.7 | $300 | $68,310.00 |
| Ripa, Augustine Ropes & Gray | 413.25 | (56.05) | 357.20 | 321.48 | $225 | $72,333.00 |
| Idilbi, Jason Ropes & Gray | 149.25 | (20.75) | 128.50 | 115.65 | $225 | $26,021.25 |
| Beauregard, Sheryl Ropes & Gray | 52.50 | 0 | 52.50 | 47.25 | $100 | $4,725.00 |
| Antzoulatos, Sophia Ropes & Gray | 21.75 | 0 | 21.75 | 19.575 | $100 | $1,957.50 |
| Sheffield, Yolanda Project Vote | 18.80 | 0 | 18.80 | 16.92 | $225 | $3,807.00 |
| Mellor, Brian Project Vote | 6.20 | 0 | 6.20 | 5.58 | $400 | $2,232.00 |
| Total: | 932.50 | (76.80) | 855.7 | 770.13 | | $184,223.25 |